In re OWENSBORO CANNING CO., INC., Debtor.

CONTINENTAL CAN COMPANY, INC., Plaintiff (Appellee),

v.

OWENSBORO CANNING CO., INC., et al., Defendants (Appellants).

Civ. A. No. 85–0067–O(CS).

United States District Court, W.D. Kentucky, Owensboro Division.

Feb. 8, 1988.

Ronald J. Bamberger, Steven D. Crone, Owensboro, Ky., for Owensboro Canning Co., Inc.

William Stephen Reisz, Reisz, Brown & Rosenbaum, Louisville, Ky., for The Creditors Committee of Owensboro Canning Co., Inc.

Carl Stich, Jr., Cincinnati, Ohio, for Heekin Can, Inc.

Randy Hutchinson, Owensboro, Ky., for Crown Cork & Seal Co., Inc.

Michael A. Fiorella, John H. Helmers, Owensboro, Ky., for Continental Can Co., Inc.

## MEMORANDUM OPINION

SIMPSON, District Judge.

This action is an appeal of a determination by United States Bankruptcy Judge Merritt S. Deitz, 46 B.R. 607 (Bankr.W.D. Ky.1985), that Continental Can Company (hereinafter "Continental"), plaintiff and appellee, has a valid and enforceable security interest in the accounts receivable, inventory and raw materials of debtor, Owensboro Canning Company, Inc. (hereinafter "Owensboro Canning"), defendant and appellant. The Creditor's Committee of Owensboro Canning also joins the appellant on appeal. This Court's jurisdiction is premised upon Title 28, United States Code, Section 158(a) (1984).

The facts may be stated as follows. During August of 1983, Continental's management became concerned over Owensboro Canning's failure to timely pay $183,506.00 in bills owed to Continental. William Christopher, Continental's in-house counsel, was sent to meet with officials of Owensboro Canning. He was instructed by Continental to either arrange satisfactory payment of the debt or file suit for payment.

On August 16, 1983, Christopher and another representative of Continental met with Ron Bamberger, counsel for Owensboro Canning. After Christopher had advised Bamberger of Continental's position, the parties began negotiation of the terms for repayment. Ultimately, they agreed that Owensboro Canning would make a series of installment payments with the total debt to be secured by certain property of the debtor. However, they did not reduce the letter agreement to writing until the following day.

On August 17, Christopher arrived at Bamberger's office to meet George Panagos, President of Owensboro Canning. Panagos signed the letter agreement and paid Christopher the first installment of $10,000.00 as required by the agreement. The agreement states, in pertinent part, as follows:

1. Owensboro agrees to pay the above indebtedness to Continental on an installment basis consisting of $10,000.00 to be paid when this letter is co-signed by Owensboro; and $10,000.00 to be paid monthly for three sucessive [sic] months; thereafter, $30,000.00 shall be paid each month commencing on the fourth month until the above indebtedness is paid in full with interest thereon at the rate of 1% above the monthly floating prime rate of First National Bank of Chicago, Chicago, Illinois.

2. The indebtedness shall be evidenced by an installment note of Owensboro secured by a lien on all accounts receivable, inventory and raw materials now or hereafter existing which shall be perfected by a UCC–1 Statement to be filed upon the signing of this letter and evidenced by a standard form financing statement. This lien shall be subject and subordinate to the lien of Crown Cork & Seal Co., Inc., dated June 4, 1980, in the current approximate outstanding balance of $120,000.00, respecting the accounts receivable and inventory only. It is expressly understood, however, that Owensboro may, in its discretion further pledge the security described herein to other creditors provided that such further pledges shall, at all times, remain subordinate to the interest of Continental.

\*   \*   \*   \*   \*   \*

When signed by my client, George Panagos, on behalf of Owensboro Canning Company, Inc. and acting as President of

said Company, this letter will form the basis for our preparing a financing statement.

The foregoing is understood and agreed by the undersigned.

Owensboro Canning Company, Inc.

By: _____

/s/George Panagos, President

In addition to signing the above letter agreement, Panagos also signed a financing statement prepared by Bamberger.[1] After receiving the documents, Christopher promptly filed the financing statement at the County Court Clerk's Office the same day.

In November of 1983, Christopher sent Bamberger a letter along with a formal Promissory Note and Security Agreement. Both the Promissory Note and the Security Agreement stated that they were "made and dated August 17, 1983". By way of return letter, Bamberger stated that "I find your proposed Security Agreement acceptable and have recommended to George [Panagos; President of Owensboro Canning] that it be executed concurrently with the note." Although Bamberger also recomposed a part of the Note, he left the dates the same. Apparently, neither the Note nor the Agreement was ever signed. However, between August 17, 1983, and December 3, 1983, Owensboro Canning made the three (3) $10,000.00 installment payments as required by the terms of the letter agreement signed August 17, 1983.

In December of 1983, Owensboro Canning, debtor, entered into another security agreement with Heekin Can, Inc., another creditor, that stated, in pertinent part, as follows:

(3) Debtor warrants that is [sic] is the owner of the Collateral, free and clear of all liens and security interests *excepting only (1) the security interest of Continental Can Company, Inc., dated August 17, 1983 in the original amount of $183,450.18 respecting the Accounts Receivable, Inventory and Raw Materials,*

*and (2) the security interest granted hereby;* that it has the right to make this Agreement, that the Collateral is used for business purposes and will be kept at the Debtor's address specified above.

(4) *Debtor agrees to remain current in the repayment of its indebtedness to Continental Can Company, Inc. and shall not incur any further indebtedness to Continental Can Company, Inc., which is, or may be superior to the security interest granted herein.*

\*    \*    \*    \*    \*    \*

(5)(d) *Except with respect to the present security interest of Continental Can Company, Inc.* referred to above ... (emphasis added).

Also in December of 1983, Owensboro Canning failed to make the $30,000.00 installment payment as required by the letter agreement executed on August 17, 1983. Although Continental wrote several letters to debtor's counsel in an attempt to obtain compliance, the communications were to no avail.

An involuntary Chapter 7 petition was filed against Owensboro Canning in March of 1984, and three (3) weeks later Owensboro Canning was permitted to convert the action to a voluntary reorganization proceeding under Chapter 11 of the Bankruptcy Code. In its schedule of liabilities, Owensboro Canning listed Continental as an unsecured creditor.

Subsequently, Continental instituted an action before the Bankruptcy Court to determine the validity of its security interest. After an evidentiary hearing and oral arguments, Judge Deitz, by Memorandum Opinion entered February 20, 1985, held as a matter of law that the letter agreement objectively indicated that the parties may have intended to create or provide for a security interest; and found as a fact, that the parties actually intended to create a security interest. In so ruling, Judge Deitz adopted the two-prong test espoused by J. White & R. Summers, Uniform Commercial

---

1. The financing statement was a standard form naming Owensboro Canning Company, Inc. as the debtor and Continental as the secured party.

The statement covered "all accounts receivable, inventory and raw materials". Proceeds or products of the collateral were also covered.

Code, § 23–3, p. 905 (2nd Ed.1980), to determine whether the letter agreement constituted a valid security agreement. Thereafter, Owensboro Canning appealed the decision.

The issue to be presented on appeal, and as stated by Judge Deitz is as follows:

Whether the Appellee [Continental] is the holder of a valid or enforceable security interest in the accounts receivable, inventory and raw materials of the Appellant, Owensboro Canning Co., Inc.

In passing on the merits of this issue, this Court is required to subject the Bankruptcy Judge's conclusions of law to *de novo* review; *In re Consolidated Bancshares*, 785 F.2d 1249, 1252 (5th Cir.1986); *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985); *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1377 (9th Cir.1985); *In re Kimzey*, 761 F.2d 421, 423 (7th Cir.1985); *Jefferson v. Mississippi Gulf Coast YMCA, Inc.*, 73 B.R. 179 (S.D.Miss.1986); *In re Madill*, 65 B.R. 729 (D.Mont.1986); and his "findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses." Bankruptcy Rule 8013 (1984). See *In re Southern Indus. Banking Corp.*, 809 F.2d 329, 331 (6th Cir.1987); *In re Martin*, 761 F.2d 1163, 1165 (6th Cir.1985); *In re Troup*, 730 F.2d 464, 466 (6th Cir.1984); *In re Calhoun*, 715 F.2d 1103, 1110 (6th Cir.1983).

In this regard, whether the writing or writings are sufficient to meet the statutory requirements for a valid security agreement is a question of law. *S.E.L. Maduro (Florida) Inc. v. Strachan Shipping Co.*, 800 F.2d 1572, 2 UCC Rep.Serv. 687, 692–93 (11th Cir.1986). Whether the parties intended to create a security agreement is a "question of fact, or at best, mixed questions of law and fact"; *Hyman v. Semmes*, 26 F.2d 10, 12 (6th Cir.1928); see White & Summers, § 23–3 at p. 905 n. 5; and, "unless the Bankruptcy Judge has made a clear mistake applying the law to the facts, the judge's fact findings of intent must be affirmed." *Sunset Enterprises, Inc. v. B & B Coal Co., Inc.*, 38 B.R. 712,

716 (D.C.Va.1984), *aff'd.* 798 F.2d 1409 (4th Cir.1986). With these standards in mind, this Court must turn to the law of Kentucky to examine the validity of Continental's security interest. *In re Axvig*, 68 B.R. 910, 3 UCC Rep.Serv. 312 (Bankr.D.N. D.1987).

Under the Kentucky Uniform Commercial Code (hereinafter "Code"), a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless three (3) things occur: (1) the collateral must either be in the secured party's possession pursuant to agreement or the debtor must have "signed a security agreement which contains a description of the collateral", (2) value must have been given to the debtor by the secured party, and (3) the debtor must have rights in the collateral. Ky.Rev. Stat. § 355.9–201 (1964). The Code defines "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation"; Ky.Rev.Stat. § 355.1–201(37) (1987); and "security agreement" means "an agreement which creates or provides for a security interest". Ky.Rev.Stat. § 355.9–105(1)(*l*) (1987). The purpose of requiring a writing is not only evidentiary, it also fulfills the Statute of Frauds requirement of Article 9. Official Comment 5 to the Uniform Commercial Code 9–203. See Liebson & Nowka, The Uniform Commercial Code of Kentucky § 8.2(B) p. 683 (1983). However, there is no requirement that the amount secured or a maturity date be shown. These are essential contents of the underlying debt instrument. See *In re Cooley*, 624 F.2d 55, 57, 29 UCC Rep.Serv. 1415 (6th Cir.1980) (applying Kentucky law).

Giving due consideration in tandem to § 9–203 and § 9–105 of the Code, Wright and Summers contend that the question of whether a security agreement is established calls for two independent inquiries which may be stated as follows:

The *court* must first resolve, *as a question of law*, whether the language embodied in the writing objectively indicates that the parties may have intended to

create or provide for a security agreement. [citations omitted]. If the language crosses this objective threshold [citations omitted], that is, if the *writing* evidences a possible secured transaction and thus satisfies the statute of frauds requirement, then the *factfinder* must inquire whether the parties actually intended to create a security interest. [citations omitted]. Parol evidence is admissible to inform the latter [citations omitted], but not the former, inquiry.

Wright & Summers, supra.

This Court agrees with the Bankruptcy Judge that the letter agreement itself clearly indicates that Owensboro Canning may have intended to grant Continental a security interest in its accounts receivable, inventory and raw materials. The second paragraph of the letter clearly states that the indebtedness of Owensboro Canning to Continental would be secured by a lien on Owensboro Canning's accounts receivable, inventory and raw materials and that such lien would be perfected by the filing of a standard form financing statement. In addition, the letter also provides for the further pledging of the designated security to other creditors provided such security is subordinated to Continental's claim. Clearly, the writing evidences, at the least, a possible secured transaction and satisfies the Statute of Frauds requirement. Accordingly, after *de novo* review of the record in this appeal, this Court concludes that the Bankruptcy Judge properly determined that the letter agreement satisfied the the the first prong of the above-stated test.[2]

With regard to the second prong, Owensboro Canning contends that the letter agreement is deficient since it fails to establish that the parties *actually intended* to create a security agreement. In support of this contention, Owensboro Canning asserts that, because the letter agreement does not contain a "granting" clause, the document is no more than an agreement to agree. Furthermore, Owensboro Canning asserts that, because the document is labeled a "letter of intent" and states that Christopher and Bamberger "conceptually" agree to the provisions therein, Owensboro Canning had no *present* intent that the letter agreement serve as a security agreement. Bamberger testified to the same at the evidentiary hearing before the Bankruptcy Judge.

Whether a valid security agreement must necessarily contain a "granting" clause has not been decided by Kentucky courts.[3] Appellant, Owensboro Canning, would have this Court adopt a rule that would require every document purporting to be a security agreement contain specific language wherein the debtor would grant the secured party an interest in collateral. This rule originated in a Rhode Island case wherein the Court held that a financing statement fails to qualify as a security agreement if it fails to specifically grant the creditor a security interest. *American Card Co. v. H.M.H. Co.*, 97 R.I. 59, 63, 196 A.2d 150 (1963). Following a diligent research attempt, this Court could only find a single case wherein this rule of law has been followed in a literal sense. *In re Modafferi*, 45 B.R. 370, 40 UCC Rep.Serv. 268 (Bankr.S.D.N.Y.1985). See *In re Coffee Cupboard, Inc.*, 33 B.R. 668, 672 (Bankr.E.D.N.Y.1983); *Love v. Wells & Dean*, 96 Nev. 12, 604 P.2d 362 (1980) (no explanation). Other courts have rejected application of so formalistic a rule. *In re Smith*, 47 B.R. 482, 40 UCC Rep.Serv. 1067, 1069–70 (Bankr.N.D.Ohio 1985) (this rule has since been discarded); *In re Bollinger Corp.*, 614 F.2d 924, 28 UCC Rep. Serv. 289, 294 (3rd Cir.1980); *Evans v. Everett, Early & Winborne, et al*, 279

---

**2.** As pointed out in the Official Comment to § 9–203 of the Code, formal requisites for a security agreement are "reduced to a minimum". The only requirements for the enforceability of non-possessory security interests in cases not involving land are (a) a writing; (b) the debtor's signature; and (c) a description of the collateral or kinds of collateral. A cursory review of the letter agreement reveals the presence of these requirements.

**3.** Because no Kentucky court has spoken on this precise issue, the Court must, in the exercise of its best judgment, ascertain from all available data what the law is and apply it. *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F.Supp. 1371, 1377 (W.D.Ky.1987) (citations omitted).

N.C. 352, 183 S.E.2d 109, 9 UCC Rep.Serv. 769 (1971). Kentucky commentators would also reject such a rule. Liebson & Nowka, § 8.2(B)(2) at p. 691 (in discussing *American Card,* the authors state that "nowhere is a 'granting' clause mandated [by the Code]; nor should one be required. Any writing or writings that can be interpreted as evidencing the parties' intent and agreement to create or provide for a security interest meets the definition.").

In *Evans,* the Court considered whether any language in the Code necessitated application of such a rigid rule, and in rejecting the Rhode Island rule observed as follows:

> It appears that the Rhode Island court was of the opinion that technical words of conveyance from the debtor to the secured party was required to create a security interest. In criticizing *American Card,* Gilmore, a former Official Comment writer for Article 9 of the Code, in his treatise on Security Interests in Personal Property said: "Certainly, nothing in § 9–203 requires that the 'security agreement' contain a 'granting' clause ... The Rhode Island court gives it [§ 9–402] an effect reminiscent of the worst formal requisites holding under 19th century chattel mortgage acts." 1 Gilmore, Security Interests in Personal Property, § 11.4 at pp. 347–48 (1965).

*Evans v. Everett,* 279 N.C. at 357, 183 S.E.2d at 113.

▮▮▮ It is the opinion of this Court that the Bankruptcy Judge properly declined to apply the Rhode Island rule. Clearly, no magic words need be included in any security agreement to establish a valid security interest. Rather, the language of the instrument need only "lead to the logical conclusion that it was the intention of the parties that a security interest be created". *In re Coral Petroleum, Inc.,* 50 B.R. 830,

42 UCC Rep.Serv. 1001, 1016 (Bankr.S.D. Tex.1985) (citations omitted); *Eames & Woodcock Ins. Agency, Inc. v. Alles,* 40 UCC Rep.Serv. 1438, 1442 (Mass.1984) (citations omitted). See *In re Bollinger,* 614 F.2d at 928; *In re Numeric Corp.,* 485 F.2d 1328, 1331, 13 UCC Rep.Serv. 416 (1st Cir.1973). Moreover, the intention of the parties may be gleaned from the "transaction as a whole in order to determine if there is a writing or writings, signed by the debtor describing the collateral which demonstrates an intent to create a security interest in the collateral." See *In re Bollinger,* 614 F.2d at 928, 28 UCC Rep.Serv. 295. See *In re Numeric Corp.,* 485 F.2d at 1332, 13 UCC Rep.Serv. at 421.

This Court has little difficulty finding, as the Bankruptcy Judge did, that the parties actually intended to create a security interest. The plain language of the letter agreement signed by Panagos states as much. In addition, the letter agreement specifically states that it forms the basis for the financial statement that was executed and filed the same day. This financing statement also indicates the existence of a security agreement on the same date. See *Matter of Metzler,* 405 F.Supp. 622, 625 (N.D.Ala.1975) ("court may look to financing statement to aid court in construing the security contract").

Owensboro Canning's assertion that the letter agreement is merely a statement of intent to enter into a future security agreement or a "conceptual" agreement is belied by the fact that only four (4) months later in its agreement with Heekin Can, Inc., Owensboro Canning refers to the August 17th letter agreement as creating a valid security interest. It is apparent that Owensboro Canning recognized the execution of the letter agreement as a binding statement of Continental's security interest in the designated collateral.[4]

---

4. Owensboro Canning's contention that, because the letter was labeled a "letter of intent" and stated "we have conceptually agreed as follows", the letter agreement was merely an agreement to agree overlooks the form in which the agreement was drafted. The document was drawn up as a letter from Bamberger to Christopher. Bamberger had no power to bind Owensboro

Canning by his signature. Due to his inability to bind the debtor, it is obvious that any agreement as between he and Christopher would be conceptual. However, when Panagos signed directly underneath the provisions of the agreement, the security interest of Continental became operative. Panagos had authority to bind the debtor.

That the formal, detailed security agreement tendered by Christopher to Bamberger for execution was never signed is not fatal to Continental's claim. These documents were back-dated so that they would relate back to the original letter agreement. It is obvious that these documents were meant to memorialize the earlier letter agreement. Their execution would have been a "purely ministerial function, based on the agreement already in existence". *In re Numeric Corp.*, 485 F.2d at 1332, 13 UCC Rep.Serv. at 423.

Having given due consideration to the briefs and record filed herein and for the reasons stated above, it is the opinion of this Court that the letter agreement executed by the debtor, Owensboro Canning, created a valid and enforceable security interest in favor of Continental regarding its accounts receivable, inventory and raw materials. Accordingly, the findings of fact and conclusions of law of the Bankruptcy Judge are affirmed.

A separate order shall accompany this Memorandum Opinion.