This is a forfeiture case in which we must decide whether a father who lent his son money to buy an automobile was a "bona fide lienholder" whose interest was not subject to forfeiture when the State moved to condemn the vehicle after the son's arrest for possession of marijuana.
On July 12, 1993, Jeffery Jester (the son) borrowed $6500 from Jimmy Jester (the father) to buy a car. The father had previously lent the son $2500, and the son had not repaid that loan, so the father and the son agreed to combine the purchase price of the car with the prior debt, for a total indebtedness of $9000. On July 13, 1993, the son typed and both parties signed a document stating:
 "I, /s/ Jimmy Jester, sell to Jeffery Jester one 1985 White BMW 325E for the sum of $200.00 per month until May, 1997, or until the sum of $9000.00 is paid in full. Payments are to be made by the 5th day of each month beginning on August 5th, 1993.
DATE — July, 13, 1993
VEHICLE IDENTIFICATION NUMBER
WBAAB5404F9630594
BUYER — /s/ Jeffery Jester
SELLER — /s/ Jimmy Jester
1st LIENHOLDER — Jimmy Jester" *Page 823 
On the certificate of title to the vehicle, the son was listed as the "owner," and the father was listed as the "first lienholder — lien date July 13, 1993." The son made eight payments of $200 on the loan, beginning August 5, 1993, and ending March 3, 1994.
On March 9, 1994, the son was arrested for possession of marijuana. The State brought a forfeiture action, and the father claimed that his interest in the vehicle was protected from forfeiture by virtue of Ala. Code 1975, § 20-2-93(h). That section provides, in pertinent part, the following:
 "An owner's or bona fide lienholder's interest in any type of property other than real property and fixtures shall be forfeited under this section unless the owner or bona fide lienholder proves both that the act or omission subjecting the property to forfeiture was committed or omitted without the owner's or lienholder's knowledge or consent and that the owner or lienholder could not have obtained by the exercise of reasonable diligence knowledge of the intended illegal use of the property so as to have prevented such use."
In the circuit court, the parties stipulated that the son's marijuana offense was committed without the father's knowledge or consent, and that the father "could not have obtained by the exercise of reasonable diligence knowledge of the intended illegal use of the vehicle so as to have prevented such use." The sole issue, therefore, is whether the father was a "bona fide lienholder" within the meaning of § 20-2-93(h).
The State argues that because Article 9 of the Uniform Commercial Code applies "to security interests created by contract," Ala. Code 1975, § 7-9-102(2), the father cannot be a "bona fide lienholder" under § 20-2-93(h) unless he is a "secured party" under Article 9 of the U.C.C.[1] That portion of the U.C.C. codified in Alabama at § 7-9-105(1)(m) states that a secured party is "a lender, seller, or other person in whose favor there is a security interest." The State contends that the father is not a "secured party," and therefore not a "bona fide lienholder," because, it argues, the document signed by the father and son did not create a security interest in the vehicle and, thus, the document was not a security agreement.
A security agreement is "an agreement which creates or provides for a security interest." Ala. Code 1975, § 7-9-105(1)(l). A security interest is "an interest in personal property or fixtures which secures payment or performance of an obligation." Ala. Code 1975, § 7-1-201(37)a. Article 9 applies
 "[t]o any transaction (regardless of its form) which is intended to create a security interest. . . ."
Ala. Code 1975, § 7-9-102(1)(a).
 "[T]he question of whether a security agreement is established calls for two independent inquiries which may be stated as follows:
 " 'The court must first resolve, as a question of law, whether the language embodied in the writing objectively indicates that the parties may have intended to create or provide for a security agreement. [Citations omitted.] If the language crosses this objective threshold (citations omitted], that is, if the writing evidences a possible secured transaction and thus satisfies the statute of frauds requirement, then the factfinder must inquire whether the parties actually intended to create a security interest. [Citations omitted.] Parol evidence is admissible to inform the latter [citations omitted], but not the former, inquiry.' "
J. White R. Summers, Uniform Commercial Code, § 23-3 at 905 (2d ed. 1980), as quoted in In re Owensboro Canning Co.,82 B.R. 450, 453-54 (Bankr.W.D.Ky. 1988) (emphasis and brackets added by the bankruptcy court). *Page 824 
 "[T]he [Uniform Commercial] Code requires 'no magic words or precise form' to evidence a possible security interest . . . Even unorthodox documents containing words such as 'collateral,' 'pledge,' . . . and 'lienholder' are likely to be upheld as adequate security agreements, even when not explicitly labeled as such. . . . [T]he drafters did not intend that specific 'words of grant' be required."
2 J. White R. Summers, Uniform Commercial Code, § 24-3 at 301-02 (3d ed. 1988). See also Matter of Hollie, 42 B.R. 111,117 (Bankr.M.D.Ga. 1984) ("A clause that specifically grants a party a security interest is not necessary. Rather, the Court must refer to the general law of contracts and determine whether the parties intended to create a security agreement.")
 "[N]o magic words need be included in any security agreement to establish a valid security interest. Rather, the language of the instrument need only 'lead to the logical conclusion that it was the intention of the parties that a security interest be created.' Moreover, the intention of the parties may be gleaned from the 'transaction as a whole in order to determine if there is a writing or writings, signed by the debtor describing the collateral which demonstrates an intent to create a security interest in the collateral.' "
In re Owensboro Canning Co., 82 B.R. at 455 (citations omitted).
The first inquiry outlined by White and Summers is "whether the language embodied in the writing objectively indicates that the parties may have intended to create or provide for a security agreement." J. White R. Summers, Uniform CommercialCode, § 23-3 at 905 (2d ed. 1980). That inquiry presents a question of law for which our review is de novo. See In reOwensboro Canning Co., 82 B.R. at 453. We conclude that the agreement signed by the father and the son on July 13, 1993, does indicate that the parties may have intended to create a security agreement. The designation on the agreement that the father was "1st LIENHOLDER" indicates that the writing "crosses th[e] objective threshold, that is, . . . the writing evidences a possible secured transaction." Id. See In re Hite, 4 B.R. 547,548 (Bankr.N.D.Ohio 1980) (wherein the court held that (1) a promissory note that was signed by the debtor, that described the collateral, and that was stamped "secured note" and (2) a properly executed and filed financing statement, were sufficient to give the bank a security interest in the described collateral); Georgia Pacific Corp. v. ConsolidatedSuppliers, Inc., 332 So.2d 368 (Fla.Dist.Ct.App. 1976) (wherein the court held that a transaction created a security interest, despite the fact that the promissory note did not recite any security, because the debtor and the lenders simultaneously executed a "notice of lien" in compliance with the certificate of title law).
The next inquiry is "whether the parties actually intended to create a security interest." J. White R. Summers, UniformCommercial Code, § 23-3 at 905 (2d ed. 1980). The undisputed evidence in this case indicates that the parties intended the father to have in the car an interest that secured payment of the loan. Explaining why father and son signed the agreement, the son testified:
 "[My father] was upset because I hadn't put forth any effort to pay back the [$2500 borrowed] before so he decided if I was going to have [the $6500] we were going to sit down and do this to where if I didn't pay he wouldn't come out with a total loss. He said he had come out with a total loss on the money he had let me borrow before and that if he was willing to help me that I should be willing to do something to where he wouldn't lose his money."
"Whether a particular document or transaction creates a 'security interest' basically depends upon the intent of the parties." Foley Machinery Co. v. John T. Brady Co., 62 Misc.2d 777,780, 310 N.Y.S.2d 49, 53 (N.Y. Sup. Ct. 1970).
 " ' "[W]e must gather the intention of the parties from the entire instrument without regard to its form, or technical terms used therein . . . in the light of the nature of the transactions, the situation and relationship of the parties, and the purposes sought to be achieved by them." ' The ultimate determination, therefore, must be a factual *Page 825 
one. Commerce Union Bank v. John Deere Industrial Equipment Co., 387 So.2d 787, 790 (Ala. 1980) (quoting RCA Corp. v. State Tax Commission, 513 S.W.2d 313 (Mo. 1974))" ' "
Sharer v. Creative Leasing, Inc., 612 So.2d 1191, 1193
(Ala. 1993).
As to the first prong of the White and Summers test, we conclude that the July 13 agreement evidences a possible secured transaction. Accordingly, we hold that the circuit court erred when it determined that the agreement, as a matter of law, did not establish a security interest in the vehicle.
As to the second prong of the test, we conclude that the father and the son actually intended to create a security interest. The son testified that he and his father executed the July 13 agreement so that if the son "didn't pay [the father] wouldn't come out with a total loss." Furthermore, the son applied for a certificate of title designating his father as first lienholder. Compare Matter of Metzler, 405 F. Supp. 622,625 (N.D.Ala. 1975) ("[c]ourt may look to financing statement to aid the [c]ourt in construing the contract").
We hold that the father was a secured party within the meaning of Article 9 of the U.C.C. and thus, necessarily, was a "lienholder" within the meaning of Ala. Code 1975, §20-2-93(h). We must now determine whether the father was a "bona fide lienholder" whose interest was protected from forfeiture under § 20-2-93(h). Although there is a split of authority regarding whether one who has an unperfected security interest can be a "bona fide" lienholder or secured party within the meaning of state forfeiture statutes, see Annot., 1 A.L.R. 5th 317 (1992), we need not resolve that question in this case, because the father clearly perfected his security interest pursuant to Ala. Code 1975, § 32-8-61 et seq., the Alabama Uniform Certificate of Title and Antitheft Act.
In State v. One 1979 Pontiac Trans Am, 771 P.2d 682 (Utah App. 1989), grandparents had lent their grandson money to buy a car. When the grandson was later arrested for possession of cocaine and the State filed a petition to have the car forfeited, the grandparents argued that they had a "bona fide security interest" in the vehicle within the meaning of the Utah forfeiture statute. The Court of Appeals of Utah discussed the meaning of the term "bona fide":
 "To ascertain the plain meaning of the term 'bona fide' we turn to Webster's Third New Int'l Dictionary, 250 (1986), wherein 'bona fide' is defined as being 'made in good faith without fraud or deceit. . . .' Similarly, Black's Law Dictionary
160 (5th ed. 1979), defines 'bona fide' as 'in or with good faith; honestly, openly, and sincerely; without deceit or fraud.' Accordingly, we hold that to establish a security interest is 'bona fide' under the forfeiture statute, one must only establish an actual, good faith interest in the property not derived by fraud or deceit. Under this definition, the [grandparents] have a bona fide security interest in [the grandson's] [automobile]. The [grandparents] loaned [the grandson] money towards the purchase and repair of the [automobile] and a balance of $3,883 remained due on this loan. The [grandparents] believed in good faith that [the grandson] would repay the loan and that they had a lien against the [automobile] to secure their loan. Finally, the State does not claim the [grandparents] knew of [the grandson's] illegal use of the [automobile] to transport drugs. Based on the foregoing, we conclude the [grandparents] had a bona fide security interest within the meaning of [the Utah forfeiture statute]."
State v. One 1979 Pontiac Trans Am, 771 P.2d at 685 (emphasis added). See also Hallman v. State, 141 Ga. App. 527,233 S.E.2d 839 (1977) (father who lent his daughter money for purchase of vehicle later used to transport narcotics not precluded from claiming protection from forfeiture); State v. Fouse,120 Wis.2d 471, 355 N.W.2d 366 (Wis.App. 1984) (aunt and uncle who lent nephew purchase price of vehicle, which was later seized for controlled substances offense, were entitled to have their interest protected from forfeiture).
Like the Utah court, we believe that a "bona fide lienholder" is one who, before the seizure of the vehicle, had "an actual, good faith interest in the property not derived by fraud or deceit," and one who had no actual *Page 826 
or constructive knowledge of the intended illegal use of the vehicle.
That definition conforms to decades of Alabama case law holding that only genuine, nonfraudulent interests are protected from forfeiture. Beginning with decisions on forfeitures of vehicles involved in the transportation of prohibited liquor, and continuing with decisions on forfeitures under the Controlled Substances Act, Alabama courts have carefully scrutinized intra-family transactions involving forfeited vehicles to determine whether the claimant to an exemption from forfeiture had a good faith, preseizure interest in the property. See, e.g., Felder v. State, 515 So.2d 17
(Ala.Civ.App. 1987) (title to vehicle put in name of an 18-month-old child as a subterfuge); Lee v. State, 259 Ala. 455, 458,66 So.2d 881, 884 (1953) (wife's "paper title" to automobile used in the transportation of prohibited liquor "was no more than a sham to protect the [vehicle] from seizure"); Emerson v. State,218 Ala. 18, 19, 117 So. 463, 464 (1928) (observing that "transactions of this sort between husband and wife should be closely scanned" for fraud, court rejected claim that husband had made a Christmas gift of car to wife, given that title and license plate registration remained in husband's name); Beardenv. State, 211 Ala. 241, 100 So. 93 (1924) (court held that claimant's purchase of automobile from his brother was "concocted" after seizure of vehicle). Accord Hillsboro v. OneParcel of Real Property, 127 Or. App. 711, 873 P.2d 1095 (1994) (son's executing a quitclaim deed to his parents on the day he was indicted for possession of marijuana was a mere sham to avoid forfeiture of house).
In this case, the father had an actual, good faith interest in the vehicle eight months before the arrest of the son and the seizure of the vehicle. Before his arrest, the son had made eight payments on the vehicle. The record provides us with no reason to think that the father, who kept a receipt book indicating his son's loan payments, did not believe in good faith that he had a lien on his son's car and that his son would repay the loan. The State stipulated that the father had no actual or constructive knowledge of his son's illegal use of the car. Based on the foregoing facts and authorities, we hold that the father was a bona fide lienholder, within the meaning of § 20-2-93(h), whose interest in the vehicle was not subject to forfeiture.
The judgment of the circuit court is reversed, and the cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
ROBERTSON, P.J., and THIGPEN, YATES, and MONROE, JJ., concur.
[1] We note that former § 20-2-93(a)(4)c., the predecessor to §20-2-93(h), provided:
 "A forfeiture of a conveyance encumbered by a bona fide security interest is subject to the interest of the secured party if he neither had knowledge of nor consented to the act or omission."
 The corresponding section of the Uniform Controlled Substances Act also uses the term "bona fide security interest" rather than the term "bona fide lienholder." See Annot., 1 A.L.R. 5th 317 (1992).