Following an ore tenus proceeding, the trial court ordered condemnation and forfeiture of $1,568 in U.S. currency pursuant to § 20-2-93, Ala. Code 1975. The currency was seized from the residence and from the person of John Willie Griffin during Griffin's arrest for possession of cocaine. Section 20-2-93, as amended in 1988, subjects to forfeiture any money used or intended for use in facilitating a violation of a law of this state concerning controlled substances.
Griffin appeals, contending, inter alia, that the State failed to establish that the currency seized was subject to forfeiture under the statute.
At the ore tenus proceeding on September 19, 1991, the State presented testimony from police officer Melvin Harrison, who obtained and executed a search warrant on Griffin's Lee County, Alabama, residence on October 26, 1990, leading to Griffin's arrest for possession of cocaine and to the seizure of the contested currency. Harrison, a corporal with the vice and narcotics division of the City of Opelika Police Department, testified that at the time he obtained and executed the warrant, he was also a sworn deputy sheriff for Lee County. The State submitted as corroborating evidence an identification card identifying Harrison as a deputy for Lee County, signed by the Lee County Sheriff on August 20, 1987.
The search warrant was obtained from a Lee County circuit judge on the basis of information Harrison had gained through a "controlled buy," in which Harrison and two other police officers had arranged for a confidential informant to purchase crack cocaine from Griffin at his residence. Harrison testified that on October 24, 1990, he and the other officers met with the informant and gave him five $20 bills for use in purchasing the cocaine. Harrison had previously recorded the serial numbers of *Page 499 
these bills. The informant was provided with a concealed transmitting device and was sent into Griffin's residence to buy the cocaine. Harrison and the other officers then monitored the conversation between the informant and Griffin over the transmitting device. According to Harrison, he recognized Griffin's voice from speaking with him on the occasion of prior drug arrests. Harrison testified that he heard a drug transaction take place between the two individuals, and that the informant came out of Griffin's residence without the money and with a rock of crack cocaine in his possession.
Harrison obtained the warrant to search Griffin's residence on October 26, 1990. Approximately one hour prior to the execution of the warrant on October 26, the same informant was again sent into Griffin's residence to buy cocaine. The second controlled buy was also monitored by Harrison and the other officers, and using five more $20 bills with recorded serial numbers, the informant again purchased a rock of crack cocaine from Griffin. Once again, Harrison recognized the voice of Griffin transacting a drug sale. After the cocaine was recovered from the informant, Harrison executed the warrant on Griffin's residence, serving it upon Griffin and his wife, who was also present at the scene.
Harrison testified that as he entered the residence, he saw Griffin coming from the bathroom area of the front bedroom. Harrison secured Griffin and searched the bedroom and bathroom area, finding a rock of crack cocaine in the toilet and a set of postal scales on the back of the toilet. A sample of the toilet water was later determined to contain traces of cocaine. A plastic bag containing cocaine was found in the kitchen area, and several plastic bags containing cocaine residue were found next to a truck parked behind the residence. Griffin was arrested, and he later pleaded guilty to possession of cocaine.
In the search of Griffin's residence, Harrison and the other officers found a plastic bag containing $786 in U.S. currency on the nightstand in the rear bedroom of the residence. Intermingled with the money in this bag were two of the $20 bills that Harrison had provided to the informant on October 26. In addition, $19.00 in currency was found in the top drawer of the nightstand. Also $262.00 in currency was found in a purse on the bed in the rear bedroom; two more of the $20 bills given to the informant on October 26 were intermingled with the money in the purse. Griffin was searched, and $501 in currency was seized from the front pocket of his pants. A total of $1,568 in U.S. currency was seized during the search.
In the present case the State had the burden of proving that the currency seized was either (1) money furnished or intended to be furnished by any person in exchange for a controlled substance in violation of any law in this state, or (2) proceeds traceable to such an exchange, or (3) money used or intended to be used to facilitate a violation of any law of this state concerning controlled substances. §20-2-93(a)(4). The standard of proof was reasonable satisfaction. State v. Smith, 578 So.2d 1374
(Ala.Civ.App. 1991). The trial court found that the State met its burden of proof.
After careful review of the record, we conclude that the evidence, and reasonable inferences attendant thereto, supports the trial court's determination that the State met its burden. Such a finding is supported by the following evidence: the controlled purchases of cocaine from Griffin on October 24 and 26, 1990; the cocaine recovered from these purchases and seized during the search of Griffin's residence; the manner in which some of the cocaine that was seized was packaged; the scales seized from the bathroom; Griffin's plea of guilty to possession of cocaine; the intermingling of the money which had been provided to the informant with the money in the plastic bag and purse found in the bedroom; the manner in which the money in the plastic bag was packaged; the proximity of the money in the nightstand drawer to the plastic bag with money from a drug sale inside; and the large amount of money found on Griffin. *Page 500 
We note that the findings of the trial court following an ore tenus proceeding are presumed on appeal to be correct and will not be disturbed unless they are so unsupported by the evidence as to be plainly erroneous. Houze v. State ex rel.Galanos, 531 So.2d 916 (Ala.Civ.App. 1988). Here, the trial court's findings are clearly supported by the aforementioned evidence.
Griffin has also contended that the seizure of the $1,568 was illegal because the parties who seized the currency were municipal law enforcement officers from the cities of Opelika and Auburn and, he says, were therefore outside of their legal jurisdiction. He further contends that the search warrant was not directed to or executed by a sheriff or sheriff's deputy, in violation of §§ 15-5-5, -6, and -7, Ala. Code 1975, and was therefore invalid. These sections require that a warrant be directed to the sheriff or to any constable of the county and that it be executed by one of the officials to whom it is directed. Any evidence gained from an illegal or invalid search, Griffin maintains, should have been excluded from the ore tenus proceeding.
The evidence adduced at trial showed that Harrison, although employed as a corporal with the Opelika Police Department, was, at the time the search warrant was obtained and executed, also legally deputized by the sheriff of Lee County. Harrison could therefore obtain and execute the warrant in his capacity as a deputy sheriff. See, e.g., Walls v. State,536 So.2d 137 (Ala.Crim.App. 1988). The warrant, the evidence shows, was in fact made out to and executed by Harrison. Consequently, the statutes were obeyed.
Neither do we accept Griffin's contention on appeal that Harrison's deputization by the sheriff of Lee County while also employed as a police officer with the City of Opelika was forbidden by art. XVII, § 280, of the Alabama Constitution, which prohibits a person from holding more than one "office of profit" under the state at the same time. Griffin correctly points out that the office of city chief of police has been held to be an office of profit. See Alexander v.State, 274 Ala. 441, 150 So.2d 204 (1963). However, we are by no means prepared to hold that a city police officer with the rank of corporal holds an office of profit within the meaning of § 280. Moreover, it is not necessary to decide this point here, inasmuch as it has been held that a deputy sheriff in this state does not hold an office of profit within the meaning of § 280. Kemp v. Wilson, 17 Ala. App. 224,84 So. 636 (1919). Harrison, therefore, could serve as a municipal police officer at the same time he was a sworn sheriff's deputy for the county without violating § 280.
Griffin also objects to the trial court's denial of his pretrial motion for appointment of counsel. The court later accepted filings from Griffin's wife as amicus curiae, and Griffin's wife represented Griffin at trial. Griffin's complaint is not well taken; actions brought under §20-2-93 are considered to be civil actions, and, as such, Griffin was not entitled to appointment of counsel as a matter of right.
Griffin asserts two additional claims, that there was a break in the chain of custody of the evidence seized during the search and that he was deprived of his right to be present at the ore tenus proceeding. Without deciding the merits of these claims, we find that neither of these issues was raised at trial and preserved for appeal. We cannot hold a trial court in error where the trial court has not been apprised of an alleged error and given an opportunity to act thereon. Sea CalmShipping Co., S.A. v. Cooks, 565 So.2d 212 (Ala. 1990).
For the foregoing reasons, we hold that the judgment of the trial court is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur. *Page 501