The State of Alabama filed a petition to condemn, pursuant to §20-2-93, Ala. Code 1975, $22,003 in currency found in an automobile after the occupants of the automobile, Christopher Schmidt and Jack Hillegass, had been arrested on charges of possessing a controlled substance. Hillegass filed a motion claiming ownership of the funds claimed by the State in its condemnation action. At trial, however, Hillegass claimed ownership of only $12,000 in currency; that currency was seized from a duffel bag that had been located on the back seat of the automobile.[1]
On April 11, 2000, the trial court entered a judgment denying Hillegass's motion and awarding the $22,003 in currency to the Drug Fund, Hoover Police Department, Narcotics Division, for use in law enforcement. On May 8, 2000, Hillegass filed a postjudgment motion pursuant to Rule 59, Ala.R.Civ.P. Hillegass's motion was denied by operation of law, pursuant to Rule 59.1, Ala.R.Civ.P., on August 7, 2000. See Rule 6(a), Ala.R.Civ.P. Hillegass filed a notice of appeal on September 13, 2000, within 42 days of the date on which *Page 751 
his postjudgment motion had been denied. See Rule 4(a), Ala.R.App.P.
We note that in its brief on appeal, the State argues that Hillegass's appeal is untimely. In making this argument, the State relies on a notation, dated July 6, 2000, on the case action summary sheet that states "motion denied." However, that notation is not signed or initialed by the trial judge. Although a judgment or an order need not be phrased in any particular language or in formal language, it must be signed or initialed by the trial judge. Rule 58(b), Ala.R.Civ.P. The July 6, 2000, notation on the case action summary sheet did not constitute a valid order of the trial court denying Hillegass's postjudgment motion, and, therefore, Hillegass's appeal is timely.[2]
The record indicates that Hillegass, a resident of Florida, rented an automobile and traveled to Birmingham. Hillegass testified that he operates a business that provides various forms of entertainment services to nightclubs.[3] Hillegass testified that he traveled to Birmingham to meet one of his business's managers and that he rented a hotel room in Birmingham on a Friday night and slept in his hotel room for most of Saturday. Hillegass testified that he met with his manager on Saturday evening, and that the manager gave him $12,140 in cash, which he said represented the proceeds for his business's providing entertainment for several nightclubs. Hillegass also testified that the manager provided many receipts for expenses the manager had incurred while traveling with the entertainers. Hillegass testified that he placed the $12,140 in currency and the receipts into a large duffel bag that he said also contained some of his clothing.
Hillegass testified that he lent his rented automobile to a friend, Schmidt, on Saturday morning. He testified that on Sunday, he contacted Schmidt to have him return the automobile because, he said, at that time he was ready to return to Florida. Hillegass testified that when he contacted Schmidt on Sunday, he and Schmidt decided to go to a steak restaurant in Hoover; Schmidt drove the rented automobile.
On the way to the restaurant Schmidt stopped at a convenience store to purchase rolling papers, but the store did not have rolling papers. Brian Nelson, a police officer, testified that he was in the convenience store when Schmidt came in and that Schmidt appeared disoriented and his eyes appeared to be glazed; Nelson said he suspected that Schmidt was under the influence of a controlled substance.
Schmidt left the convenience store, returned to the automobile, and drove to another store approximately two blocks from the first store. Nelson testified that he followed the automobile to the second store. Nelson testified that when Schmidt came out of the store and returned to the automobile, he approached the automobile and asked Schmidt and Hillegass if he could speak to them. Nelson testified that the two men agreed to speak to him. Nelson asked Schmidt to empty his pockets; *Page 752 
Schmidt did so, Nelson said, and a bag of cocaine fell from his pocket. Nelson testified that the two men denied there was any contraband in the automobile and that they consented to his request to search the automobile.
Hillegass disputed some of Nelson's testimony regarding the conversation with Nelson. Hillegass testified that Nelson asked to see the two men's identification and that Nelson never asked him or Schmidt whether there was any contraband in the automobile. Hillegass admitted that he gave Nelson permission to search his duffel bag, which was located on the backseat of the automobile.
Nelson discovered $2,800 in the automobile console; some marijuana in a pocket in the door; $12,000 in currency in the duffel bag located on the backseat of the car; and 509 pills and $7,000 in currency in a backpack located in the trunk of the automobile. The 509 pills were Ecstasy, a controlled substance. Other police officers arrived while Nelson was searching the automobile. The police confiscated the drugs and the currency located within the automobile. In addition, the police officers also confiscated $203 in currency from Schmidt's pockets.
Nelson placed Schmidt and Hillegass under arrest; each was later charged with possession of a controlled substance. Hillegass made no statement to the investigating officers. Schmidt told the investigating officers that he and Hillegass were working together, that they had obtained 3,000 Ecstasy tablets in Florida to sell in Alabama, and that they had spent the weekend "delivering" the drugs.
Hillegass testified that the $12,000 was money from his business and that he had intended to use the currency as the payroll for his employees. He testified that he had both the money and the receipts in the duffel bag, but that the police did not confiscate the receipts. Hillegass testified that the receipts were with his accountant and that he had not brought them with him to the trial. Hillegass testified that he knew that Schmidt dealt drugs, but that he did not know the controlled substances were in the automobile at the time Nelson asked to search the automobile or how the drugs got into the automobile.
The trial court entered a detailed order setting forth the facts of the case and its determinations of the factual issues. The trial court found that Hillegass's testimony regarding the source of the $12,000 was not credible. In so finding, the trial court stated:
 "The court finds that there is conflicting testimony in relation to the receipts claimant Hillegass claims to have had in his bag. He testified that the receipts were in his bag, along with some clothes and the $12,140, and [that the receipts] are now with his accountant in Florida. On the other hand, Detective Enderson testified that when she searched the bag, no receipts were present, and that if [receipts] had been present, she would have seized them as evidence. In the Court's experience, the police always seize any receipts they recover to help determine the origin of the currency recovered. The fact that Detective Enderson said she did not find any receipts in claimant Hillegass's bag, and [the fact that] he says the [receipts] were [in the duffel bag] but [that] he did not bring them to court, places [Hillegass's] credibility at issue.
 "The Court is reasonably satisfied from the evidence and inferences attendant thereto that the United States currency in issue was used or intended to have been used to facilitate a violation of the Alabama Controlled Substances Act, and that the United States currency should be declared contraband, condemned, and forfeited to the State." *Page 753 
Hillegass's only argument on appeal is that the State failed to present sufficient evidence to create a prima facie showing that the $12,000 in currency of which he claims ownership was used or intended to be used in violation of Alabama's controlled-substance laws. Therefore, Hillegass argues, the trial court erred in ordering that the $12,000 in currency be forfeited.
In order to make a prima facie showing that property is due to be confiscated pursuant to § 20-2-93, Ala. Code 1975, the State must prove that the currency seized was:
 "(1) furnished or intended to be furnished by [Hillegass] in exchange for a controlled substance; (2) traceable to such a transaction; or (3) used or intended to be used to facilitate a violation of any law of this state concerning controlled substances."
Wherry v. State ex rel. Brooks, 637 So.2d 890, 892 (Ala.Civ.App. 1994); § 20-2-93(a)(4).
The evidence in the record indicates that controlled substances were found in the automobile rented by Hillegass and in which he was a passenger; that Schmidt told the police that he and Hillegass had spent the weekend "delivering" the Ecstasy tablets and that only 509 of an original quantity of 3,000 tablets remained in their possession; that large quantities of currency were found in other areas of the automobile, as well as in Hillegass's duffel bag; and that, although Hillegass claimed he had documentation to prove that the $12,000 in currency was derived from his business, he did not produce any receipts or any other documentation at trial.
Where a trial court receives ore tenus evidence, its factual findings based on that evidence will not be reversed absent a showing that they are plainly or palpably wrong and amount to an abuse of discretion.$1,568.00 United States Currency v. State, 612 So.2d 497 (Ala.Civ.App. 1992); Culpepper v. State, 587 So.2d 359 (Ala.Civ.App. 1991). After receiving ore tenus evidence, the trial court resolved the conflicts in the evidence against Hillegass, noting that it found Hillegass's credibility to be questionable. We cannot say that the trial court erred in finding that the State had made a prima facie showing that the $12,000 in currency was used or intended to be used in a violation of the controlled-substance laws of this state. See $10,000 in United StatesCurrency v. State, 598 So.2d 979 (Ala.Civ.App. 1992). We also conclude that the evidence supports the trial court's determination that the currency was related to a violation of the Alabama Controlled Substances Act, and, therefore, that it was due to be confiscated pursuant to §20-2-93. See Johnson v. State, 667 So.2d 105 (Ala.Civ.App. 1995); Moynesv. State, 555 So.2d 1086 (Ala.Civ.App. 1989). We affirm the trial court's judgment.
AFFIRMED.
Yates, P.J., and Crawley, Pittman, and Murdock, JJ., concur.
[1] We note that Hillegass maintained at trial that the bag contained $12,140 in currency.
[2] In his reply brief, Hillegass has submitted a signed copy of the trial court's denial of his postjudgment motion; that order is dated August 4, 2000. However, neither party has sought, pursuant to Rule 10(f), Ala.R.App.P., to supplement the record on appeal to include this order. Therefore, that order is not properly before this court. We note, however, that had the record on appeal been supplemented to include the August 4, 2000, order, we still would find the appeal timely.
[3] Hillegass testified that he "provides night clubs with bands, comedians, women oil wrestling, foxy boxing, boxing events, [and] bikini contests." He said, "Anything that goes on in a nightclub, I provide." Hillegass also said he operated several "male revue" groups.