This case broadly involves a contract claim by the appellee, City of Leeds, Alabama, and others (collectively "Leeds"), in regard to an agreement to transfer the Leeds Waste Water Treatment Plant ("plant"), to the appellant, Jefferson County ("the County"). Leeds sued the County for, among other things, a declaratory judgment, injunctive relief, and other equitable relief. The evidence indicates that the County charges residents of the City of Leeds who live outside Jefferson County double the standard sewage rate charged Leeds residents who live inside Jefferson County. The Leeds city limits extend beyond Jefferson County into St. Clair and Shelby Counties. The County appeals the ruling of the trial court in favor of Leeds. After negotiations for the transfer of the plant between the County and Leeds in 1973, Jefferson County Commissioner Tom Gloor sent a letter to the mayor of Leeds confirming the parties' decision to enter into an agreement. The trial court found that this letter formed an agreement that legally bound each party to certain commitments. The letter stated that sewer service would be provided at "an equitable rate to all users." After the letter from Gloor in 1973, Leeds conveyed the plant by deed to the County for $1.00. By attaining ownership of the plant, the County became eligible for, and received, Federal grant money for repairs to, and further development of, its sewer system. In 1982, the County adopted a new resolution whereby the County would increase the sewage rate charged to non-Jefferson County residents of Leeds to an amount double the rate charged Jefferson County residents.
The trial court determined that Leeds met all necessary obligations required by the agreement when it conveyed the plant to the County. Leeds argued that the County was in fact in breach when it increased the rate charged to out-of-County customers to an amount double that charged to County customers. The trial court ruled that after receiving the benefit of the bargain, the County attempted to avoid the commitments made by the Jefferson County Commission in 1973 and raised fees as mentioned above.
We note that our review of the trial court's judgment in this matter is governed by the ore tenus rule. Under the ore tenus rule of review, a judgment of the trial court will not be disturbed unless it is based on findings of fact that are plainly and palpably wrong or manifestly unjust. Silverman v.Charmac, Inc., 414 So.2d 892 (Ala. 1982). It is the duty of the trial court to resolve any conflicting testimony and to render a judgment accordingly. "Where the trial court hears ore tenus evidence, a presumption of correctness exists as to the court's findings on issues of fact. Its factual determinations will not be disturbed unless they are clearly erroneous, without supporting evidence, manifestly unjust or against the great weight of the evidence." Gaston v. Ames, 514 So.2d 877
(Ala. 1987). Upon review of the record, we conclude that the trial court correctly applied the law to the facts established by the evidence, and we, therefore, adopt the court's findings, as set out below:
 "It is undisputed that Jefferson County made a commitment evidenced by the letter of Tom Gloor as Commissioner of Public Works, that sewer service would be provided to all persons residing in Leeds at a cost that was equitable. It is undisputed that the City of Leeds in reliance on the firm commitment made by Jefferson County conveyed to Jefferson County the real property comprising its sewage treatment plant for the sum of $1.00. Now that the City of Leeds has performed its part of *Page 355 
the agreement, Jefferson County says that Tom Gloor's letter cannot be considered a binding contract on the County and, further, that the County cannot be estopped from charging double the rate to residents of St. Clair and Shelby Counties.
 "In the present case, however, there was evidence not only that there had been an agreement made between Tom Gloor, one of the County Commissioners, and the City of Leeds, but there was also evidence that the City of Leeds had fully performed its obligations under the agreement by conveying its sewage treatment plant to Jefferson County. Jefferson County apparently wishes to retain ownership of the sewage treatment plant and the federal grants and other benefits resulting from such ownership but wishes to be relieved of the obligations undertaken by Jefferson County in return for the conveyance of the plant.
 "Jefferson County was most desirous of obtaining ownership and control over the sewage treatment plant owned by the City of Leeds. Leeds conveyed the plant to Jefferson County in response to its request on the basis of the commitments made to Jefferson County by the Chairman of the Jefferson County Commission at a meeting in the offices of the Water Improvement Commission in Montgomery on January 25, 1973. By letter dated that same day, a commitment was made on behalf of the County that sewer service would be provided at a cost equitable to all users. On the basis of that commitment, the City of Leeds by its Mayor and City Council conveyed its sewage treatment plant to Jefferson County. Jefferson County does not seek rescission. It does not seek to reconvey the sewage treatment plant to Leeds. As stated by the U.S. Supreme Court in Hitchcock v. City of Galveston, [96 U.S. 341, 24 L.Ed. 659 (1877)], it would be sanctioning rank injustice to hold that Jefferson County is not bound by its promise under the circumstances of this case."
In its final judgment the trial court went further, and, in fact, set a new and distinct rate for the County to charge Leeds residents living outside Jefferson County for sewer service. On this issue we do not address whether the rate set by the trial court is equitable or inequitable; rather, we speak to the trial court's lack of authority to set a sewer service rate by substituting its own judgment for that of the Jefferson County Commission.
The courts have expressly rejected any notion that the judicial branch has the authority or duty to set utility rates.Alabama Metallurgical Corp. v. Alabama Public ServiceCommission, 441 So.2d 565, 570 (Ala. 1983); ContinentalTelephone Co. of the South v. Alabama Public ServiceCommission, 427 So.2d 981, 984 (Ala. 1982). This Court has stated that the act of rate-making and regulation is a function of, and may be delegated by, the Legislature. City ofBirmingham v. Southern Bell Tel. Tel. Co., 234 Ala. 526,176 So. 301 (1937). The authority of the judiciary is to ensure that legislative power is confined within constitutional limits and, so long as it is, the courts will have no duty. Id.
Amendment 73, Constitution of Alabama 1901, vests the governing body of Jefferson County with the authority to set reasonable and nondiscriminatory sewer service rates. Also, the state Legislature, under Ala. Acts 1949, Act 619, Regular Session, delegates to the Jefferson County Commission the legislative power to set sewer service rates. "Amendment 73 clearly authorizes the County to set rates for sewer service."Shell v. Jefferson County, 454 So.2d 1331 (Ala. 1984). We, therefore, affirm the judgment in favor of the City of Leeds insofar as it held that the County had violated the contract. We reverse that portion of the judgment imposing a rate adjustment, and we remand with instructions for the trial court to issue an order directing the Jefferson County Commission to establish an equitable rate.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
HOOPER, C.J., and MADDOX, SHORES, and COOK, JJ., concur. *Page 356