MURDOCK, Judge.
The State ex rel. Nathan G. Watkins, Sr., District Attorney (“the State”), appeals from a judgment of the Sumter Circuit Court declining to condemn and forfeit a 2001 Cadillac Deville automobile (“the automobile”). We reverse and remand.
On March 24, 2001, police officers with the York Police Department arrested Richard Sellers, Jr. The officers had received a tip that Sellers was receiving marijuana through the mail from Texas and that he was having the drugs delivered to his grandmother’s address, where he would pick up the drugs for later distribution. By alerting the postal service to the potential drug deliveries, the officers intercepted a box to be delivered to Sellers. A police canine searched the box; the canine indicated to police officers that the box contained a controlled substance, so the officers allowed the package to be delivered to Sellers’s grandmother’s residence while the location was put under surveillance. Sellers came to his grandmother’s residence in the automobile to pick up the package; upon retrieving the package, he placed it in the back seat of the automobile.
The officers stopped Sellers as he began to drive away from his grandmother’s residence, and they seized the box from the automobile. Upon opening the box, the officers discovered that it contained 13.9 pounds of marijuana, the authenticity of which was later verified by forensic tests. The officers also discovered $5,561 in United States currency in the automobile; the *735 bills were in small denominations such as $20 bills.
The officers discovered several papers in the glove compartment of the automobile, including a certificate of title for the automobile registered in Sellers’s name; a receipt for a certificate of deposit in the amount of $55,000, which was listed as being payable to both Sellers and another individual, Alisha Gibbs; and a promissory note, security agreement, and truth-in-lending disclosure form dated February 19, 2001, which listed the certifícate of deposit as the security interest for a loan used to purchase the automobile.
On March 29, 2001, the State filed a petition to condemn and forfeit the $5,561 and the automobile, contending that Sellers had used or intended to use the currency and the automobile to facilitate the transportation or distribution of a controlled substance, a violation of § 20-2-93, Ala.Code 1975. On April 19, 2001, Gibbs filed a motion to intervene in the proceedings, contending that she was the equitable owner and/or a bona fide lienholder of both the automobile and the currency. On March 21, 2002, a hearing was held concerning the State’s petition, with the trial court receiving evidence ore tenus.[1]
Testimony at the hearing established that, although Sellers was unemployed and had not worked for some time when the currency and the automobile were seized, he had been making monthly payments on the automobile in the amount of $722.90. Testimony also indicated that Sellers associated with persons who had been arrested in the past for drug trafficking. Testimony further indicated that Sellers drove the automobile frequently and that ownership of the automobile had remained exclusively in his name until August 29, 2001, some five months after the seizure of the automobile, at which time Gibbs obtained a certificate of title to the automobile in her name.
Gibbs testified at the hearing that she and Sellers had lived together for about a year before his arrest on the drug charges. She stated that in February 2001 she had received a settlement from the death of her daughter totaling $378,000 and that she had placed the money in a joint checking account under her and Sellers’s names. Gibbs testified that soon thereafter Sellers, without her knowledge, withdrew $55,000 from that account, which, she said, he used to purchase a certificate of deposit; Gibbs stated that Sellers then used the certificate of deposit — again without Gibbs’s knowledge — as collateral for a loan to purchase the automobile. Gibbs stated that she had no knowledge that Sellers was dealing drugs, or that he may have been using the automobile to facilitate the distribution of drugs, or that he was receiving packages at his grandmother’s residence. In addition, the two police officers who testified at the hearing acknowledged that they had no direct evidence that Gibbs knew of Sellers’s involvement with drugs. Gibbs also testified that because Sellers had failed to keep up his payments on the automobile loan, the bank had foreclosed on the loan by offsetting the amount owed on the loan against the certificate of deposit which had been pledged as collateral for the loan.
After hearing the evidence, the trial court issued a judgment in which it determined that the $5,561 was due to be forfeited[2] but that the automobile was not *736 subject to forfeiture because Gibbs had demonstrated that she was a bona fide lienholder of the automobile at the time of its seizure. The trial court’s determination regarding the $5,561 has not been appealed; however, the State appeals the trial court’s judgment refusing to forfeit the automobile.
“On review of a forfeiture judgment after an ore tenus proceeding, the trial court’s judgment is presumed correct unless the record shows it to be contrary to the great weight of the evidence.” Gatlin v. State, 846 So.2d 1090, 1093 (Ala.Civ.App.2002). The State contends that the trial court erred in determining that the automobile was not due to be forfeited under § 20-2-93.
“In a § 20-2-93, [Ala.] Code 1975, forfeiture proceeding, the State may establish a prima facie case by showing that the item to be forfeited was used, or intended to be used, in violation of the Alabama Uniform Controlled Substances Act. Culpepper v. State, 587 So.2d 359 (Ala.Civ.App.1991). The standard of that proof is reasonable satisfaction. Agee v. State ex rel. Galanos, 627 So.2d 960 (Ala.Civ.App.1993). Once a prima facie case is established by the State, an owner or lienholder of the seized property may prevail if he or she proves that the act was committed without his or her knowledge and that he or she could not have obtained that knowledge by the exercise of reasonable diligence so as to have prevented the illegal use. Culpepper, § 20-2-93(h), [Ala.] Code 1975.”
Robbs v. State ex rel. Whetstone, 674 So.2d 1301, 1302-03 (Ala.Civ.App.1995).
Both parties agree that the State established its prima facie case concerning the automobile, and Gibbs concedes that she was not the owner of the automobile at the time of its seizure; thus, the automobile may be saved from forfeiture only if Gibbs was a bona fide lienholder who had no knowledge of Sellers’s drug trafficking and who could not have obtained knowledge of his illegal activities through reasonable diligence.
On appeal, the State’s brief focuses primarily on the issue whether Gibbs knew or with reasonable diligence should have known of the intended illegal use of the automobile.[3] The State concedes that no direct evidence demonstrated that Gibbs knew of Sellers’s drug trafficking. (State’s brief, p. 12.) The State contends, however, that Gibbs could have obtained knowledge of Sellers’s illegal activities through reasonable diligence. The State points out that at the time the automobile was seized Gibbs had lived with Sellers for over a year and had known him as a friend for longer than that; that Gibbs knew that Sellers was unemployed and she had never known him to be employed; that Gibbs knew Sellers was making monthly payments on the automobile in excess of $700; that Gibbs knew that Sellers was friends with at least one person who was serving time in federal prison for drug trafficking; and that Gibbs had been interviewed by agents of the Federal Drug Enforcement Agency concerning a seizure at the Los Angeles airport of a suitcase Gibbs owned that contained $60,000 in cash. Regarding the suitcase incident, Gibbs testified that the $60,000 was her money and that she had placed the money in the suitcase to *737 hide it from Sellers because she did not approve of how Sellers was spending money. Gibbs further testified that Sellers had asked Gibbs if he could loan a friend one of her suitcases for a trip and that it was not until after the suitcase was taken that Gibbs realized that Sellers had unknowingly given his friend the suitcase containing the $60,000. The State contends that Gibbs’s testimony regarding the suitcase incident was not believable and that that incident, along with the other factors listed above, should have led Gibbs to discover Sellers’s drug-trafficking activities.
Gibbs counters that the State’s evidence concerning “reasonable diligence” amounts to nothing more than speculation. She also argues that even if the State is correct in its assertion that she could have discovered through the exercise of reasonable diligence that Sellers was involved in drug trafficking, the evidence does not indicate that she could have known Sellers would use the automobile for his illegal activities.
The trial court’s judgment, after acknowledging that a bona fide lienholder may prevent a forfeiture by demonstrating that the illegal activity was committed without his or her direct knowledge or knowledge that could have been obtained through reasonable diligence, merely analyzed whether Gibbs was, in fact, a bona fide lienholder. Using the definition of “bona fide lienholder” adopted in Jester v. State, 668 So.2d 822 (Ala.Civ.App.1995), that is, a person who, before the seizure of the property, had “‘an actual, good faith interest in the property not derived by fraud or deceit,’ ” 668 So.2d at 825 (quoting State v. One 1979 Pontiac Trans Am, 771 P.2d 682, 685 (Utah Ct.App.1989)), the trial court concluded that Gibbs “is a bona fide lienholder, within the meaning of Section 20-2-93(h) whose interest in the vehicle is not subject to forfeiture.”
The trial court’s judgment contains no finding concerning whether Gibbs could have obtained knowledge of Sellers’s illegal activities through reasonable diligence. Gibbs contends that a finding that she could not have obtained knowledge of Sellers’s illegal activities through reasonable diligence was implicit in the trial court’s determination that she was a bona fide lienholder of the automobile; however, § 20-2-93(h) makes it clear that whether a lienholder is a “bona fide” lienholder and whether that bona fide lienholder had knowledge of or could have obtained knowledge of the wrongdoer’s illegal activity are two separate determinations.
Section 20-2-93(h) states, in pertinent part:
“An owner’s or bona fide lienholder’s interest in any type of property other than real property and fixtures shall be forfeited under this section unless the owner or bona fide lienholder proves both that the act or omission subjecting the property to forfeiture was committed or omitted without the owner’s or lienholder’s knowledge or consent and that the owner or lienholder could not have obtained by the exercise of reasonable diligence knowledge of the intended illegal use of the property so as to have prevented such use.”
Under that section, the lienholder’s being a bona fide lienholder is a prerequisite to avoiding forfeiture of the property in question, but the bona fide lienholder must also demonstrate that the illegal action subjecting the property to forfeiture was committed without the lienholder’s knowledge or consent and that the lienholder could not have obtained knowledge of the illegal activity through reasonable diligence. In other words, a lienholder may have “an actual, good faith interest in the property not derived by fraud or deceit” before its seizure, Jester, 668 So.2d at 825, yet still *738 have had knowledge of the illegal activity subjecting the property to forfeiture or have been able to obtain such knowledge through reasonable diligence. Thus, the trial court’s finding that Gibbs was a bona fide lienholder of the automobile is not alone sufficient to save the automobile from forfeiture. A further finding regarding whether Gibbs knew or through the exercise of reasonable diligence should have known of Sellers’s illegal activity is required.
Because the trial court failed to complete the forfeiture analysis required under § 20-2-93(h), we find it necessary to reverse that portion of the trial court’s judgment declining to condemn and forfeit the automobile, and we remand the cause to the trial court for further findings and the entry of a judgment consistent with those findings.
REVERSED AND REMANDED.
YATES, P.J., and THOMPSON and PITTMAN, JJ., concur.
CRAWLEY, J., concurs in the judgment, with writing.

. Sellers did not answer the State's petition and the trial court therefore entered a default judgment against him as to both the $5,561 and the automobile.

. The trial court explicitly found that Gibbs's testimony that she was the true owner of the $5,561 was "not credible.”

. Although the State's brief offers that “it is questionable” whether Gibbs was a "bona fide lienholder,” the brief contains no authority for the suggestion that Gibbs’s interest in the vehicle, if any, was not a "security interest” that satisfied the requirements of § 20-2-93(h), Ala.Code 1975. This court will not make arguments or do research for the parties. McLemore v. Fleming, 604 So.2d 353, 353 (Ala.1992). See also Rule 28, Ala. R.App. P. (requiring briefs to contain appropriate citations to authority).