SEE, Justice.
Sue Smitherman petitioned this Court for a writ of certiorari to review the judgment of the Court of Civil Appeals, affirming the trial court’s civil forfeiture of a house owned by Smitherman. Smither-man argues that the State had not presented sufficient evidence to support a civil forfeiture of the house under § 20-2-93(a)(8), Ala.Code 1975. We agree; accordingly, we reverse the judgment of the Court of Civil Appeals and render a judgment in favor of Smitherman.
Smitherman owned a house approximately one block from the house in which she resided. The record shows that Smitherman purchased the property with a loan from a local bank. At the time of the forfeiture, the house had a value of approximately $70,000, and Smitherman owed approximately $1,200 on the loan.
Smitherman allowed her son, Tracy Smitherman, and her daughter, Wendy Cleckler, to live in the house. The record reflects that Tracy was living there temporarily because of marital difficulties and because his mother was concerned about his drug-addiction problem.
*33 On March 27, 2002, local police officers obtained and executed a search warrant for the house, based on a controlled buy of drugs from someone in the house.[1] It is not clear from whom the drugs were purchased. During the search of the house, seven people were arrested, including Tracy and Wendy. The police officers also seized a variety of drugs and drug paraphernalia. With the exception of one package of cigarettes found in an upstairs bedroom that contained a single marijuana cigarette, all of the drugs seized were found on persons present in the house when the warrant was executed and not in the structural components of the house or its fixtures, or on or in the furniture.[2]
On April 30, 2002, the State began a civil-forfeiture proceeding against the house by filing a petition seeking to condemn the house. In support of the petition, the State offered the affidavit of Officer Jeff Moore. That affidavit stated:
“Sue Ann Smitherman walked up to the residence while the search warrant was being executed and spoke with Agent Jeff Moore. Smitherman was told-that a drug search warrant was being executed at the residence. Sue Smitherman then stated that she had tried to tell them to stop but the [sic] just wouldn’t listen and. that she knew'this was going to happen.” ■
Officer Moore testified at the forfeiture hearing, in pertinent part, as follows:
“When she came to the residence from the residence next door,[3] she was very hysterical wanting to know what was going on. I explained to her we were executing a narcotics search warrant.She stated that, she tried to tell them this was going to happen. She had tried to tell them to quit.”
Smitherman testified that she did not recall making statements' to that effect at the time Tracy and Wendy were arrested.[4] Smitherman testified further that’ she knew that Tracy had a problem with illegal drugs and that she was hysterical when the search warrant was executed because she was afraid Tracy would be arrested and that he would go to jail. Smitherman testified that she was -concerned about Tracy’s use of illegal drugs and that she had offered to get him. help. She also testified that she and Wendy worked for the same employer and that she had never known Wendy to be involved with drug use *34 or activities. Finally, ■ she testified that, from her residence, she could not see the house in which Tracy and Wendy were living and that she was not aware that anyone was selling drugs from the house.
The trial court found that the house had been “used in the exchange, manufacture and distribution of illegal controlled substances” and ordered the forfeiture of the house.[5] Smitherman appealed to the Court of Civil Appeals, which affirmed the ruling of the trial court, without an opinion. Smitherman v. State (No. 2020601, Feb. 20, 2004), — So.2d - (Ala.Civ. App.2004) (table). Smitherman then petitioned this Court for the writ of certiorari, arguing that the State has failed to prove a prima facie case of civil forfeiture under § 20-2-93, Ala.Code 1975.
I.
“The State must establish a pri-ma facie case for the forfeiture of property under § 20-2-93. Valeska v. Keener, 606 So.2d 150 (Ala.Civ.App.1992) (cert. denied, Oct. 30,1992). The State’s standard of proof in a condemnation action is reasonable satisfaction. State v. Smith, 578 So.2d 1374 (Ala.Civ.App. 1991). On review of an ore tenus forfeiture proceeding, the trial court’s judgment is presumed to be correct unless the record shows it to be contrary to the great weight of evidence. Id.”
Pointer v. State, 668 So.2d 41, 42 (Ala.Civ. App.1995). See also State v. Smith, 578 So.2d 1374, 1376 (Ala.Civ.App.l991)(“Under § 20-2-93 the State must establish a prima facie case for the seizure, condemnation, and forfeiture of the property.... The standard of proof is reasonable satisfaction. ... The statute is penal in nature and, as such, should be strictly construed.”).
The State argues that it “presented a prima facie case sufficient to reasonably satisfy the trial court that Smitherman had knowledge that her property ... was being used to facilitate a violation of’ § 20-2-93(a)(8), Ala.Code 1975. Specifically, the State argues that the statement, which it attributes to Smitherman, that “[s]he tried to tell them this was going to happen. She tried to tell them to quit,”[6] is proof that she knew illegal activities were taking place in the house, which she owned.
Section 20-2-93(a)(8), AJa.Code 1975, provides: “The following are subject to forfeiture: ... All real property or fixtures used or intended to be used for the manufacture, cultivation, growth, receipt, storage, handling, distribution, or sale of any controlled substance in violation of any law of this state.” ‘When the state seeks to seize, condemn, and forfeit property under [§ 20-2-93], the statute must be strictly construed, and the state must establish by the evidence a prima facie case.”. Miller v. State, 567 So.2d 331, 332 (Ala.Civ. App.1990). See also Reeder v. State ex rel. Myers, 294 Ala. 260, 265, 314 So.2d 853, 857 (1975)(“Statutes which authorize condemnation and forfeiture of property are highly penal in nature and must be strictly construed.”).
Relying solely on Smitherman’s alleged comment, the State sought civil forfeiture of the house owned by Smitherman and *35 valued at $70,000. In Pointer, supra, Charlie Pointer was arrested for growing over 20 marijuana plants on a 1-acre lot adjacent to his house. During the course of Pointer’s arrest, law-enforcement officers searched Pointer’s house and found in his bedroom a bag containing a quarter ounce of marijuana. Pointer, 668 So.2d at 42. The State petitioned for condemnation and forfeiture of the land on which the marijuana was growing and of Pointer’s house. Id.
The Court of Civil Appeals held that the State had shown to a reasonable satisfaction that the land on which the marijuana was grown was within the purview of § 20—2—93(a)(8), Ala.Code 1975. 668 So.2d at 43. However, the Court of Civil Apr peals found that the State had failed to show to a reasonable satisfaction that Pointer had used his house for the purposes stated in § 20-2-93(a)(8), Ala.Code 1975. 668 So.2d at 43. Specifically, the Court of Civil Appeals held that “seeking] the condemnation and forfeiture of Pointer’s house on the sole basis that one quarter of an ounce of marijuana was in the house was an egregious abuse of the state’s civil forfeiture law.” Pointer, 668 So.2d at 43.
In this case, the State has presented less evidence than was presented in Pointer. The evidence shows that Smitherman did not live in the house, that she could not see the house from her own house, and that she did not visit her children who were living in the house on a daily basis. Smitherman, unlike Pointer, was not charged with any offense.
The drugs found inside the house, with the exception of one marijuana cigarette, were found on persons inside the house, not in or around the house itself. Smitherman’s alleged statement that “she tried to tell them this was going to happen. She tried to tell them to quit” when she saw Tracy and Wendy being arrested reasonably established only that she had knowledge that her son and possibly other persons used illegal drugs. She did not state that she thought her house was being used for the “manufacture, cultivation, growth, receipt, storage, handling, distribution, or sale of any controlled substance ....” It is the knowledge of or consent to such use on the part of the owner of the property that the State must prove in a forfeiture proceeding. We cannot say that the statement Officer Moore attributed to Smitherman, -Without more evidence, “reasonably satisfies” the court of the truth of the charge.
II.
It is conceivable that Smitherman’s alleged comment implied knowledge of Tracy’s drug use and, therefore, implied that Smitherman had knowledge that her son would use the house to possess or to store illegal drugs so that the house would be subject to forfeiture under § 20-2-93(a)(8), Ala.Code 1975. However, this Court has held that “Receipt, as used in [drug-forfeiture statutes], means receiving for the purpose of sale or in some way to facilitate the sale of drugs. It does not mean possession merely.” Reeder, 294 Ala. at 265, 314 So.2d at 857; see also Miller v. State, 567 So.2d at 332. Thus, Smitherman’s knowledge of Tracy’s drug addiction- does not establish that Smitherman had “knowledge” or gave “consent” to any of the illegal activities that give rise to a forfeiture under § 20—2—93(a)(8), Ala.Code 1975.
III.
The State failed to make out a prima facie case for forfeiture in that it failed to prove that Smitherman had knowledge of, or that she gave consent to, the use of the house for the “manufacture, cultivation, growth, receipt, storage, handling, distri- *36 button, or sale” of drugs within the meaning of § 20-2-93(a)(8), Ala.Code 1975. Therefore, we reverse the judgment of the Court of Civil Appeals and render a judgment for Smitherman.
REVERSED AND JUDGMENT RENDERED.
HOUSTON, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.

. There is no allegation that Smitherman was aware of or participated in any way in this controlled buy.

. While all of the drugs found were found on persons, the police found some "drug paraphernalia,” including a box of plastic bags, in the house itself.

. It is unclear from the record what residence Officer Moore was referring to by the phrase "the residence next door.”

. Smitherman testified, in pertinent part:
"Q.... Do you recall speaking.to Agent Jeff Moore?
"A. Yes, sir.
"Q. And you, in fact, made a statement regarding [Tracy] Smitherman’s drug addiction, correct?
"A. I don’t recall that.
“Q.. Do you recall — you did make a statement to the officer that I knew that they were going — that this was going to happen?
“A. I talked with him. -1 don't recall saying that.
"Q. But if you heard the officer’s testimony today would you dispute that that is what was said?
"A.' I can’t dispute what he says, but I don’t recall saying that.
"Q. So in essence, you have not known them to possess or have an addiction to these narcotics that I have mentioned and yet you did make a statement to the officer saying that it was going to happen.
"A. I don't recall saying anything was going to happen.”

. The State petitioned, the trial court to condemn and forfeit the house, citing § 20-2-93, Ala.Code 1975. In its petition, the State alleges conduct that would fall under § 20-2-93(a)(8), Ala.Code 1975. The trial court’s order does not identify which paragraph of § 20-2-93 the trial court is relying on.

. The affidavit that the brief cites actually says, "Sue Smitherman then stated that she had tried to tell him to stop, but the [sic] just wouldn't listen and that she knew this was going to happen.”