51 So.3d 344 (2010)
Johnnie HILDRETH
v.
STATE of Alabama.
2081079.
Court of Civil Appeals of Alabama.
May 28, 2010.
Johnnie Hildreth, pro se.
Troy King, atty. gen., and J. Matt Bledsoe and Elizabeth E. Utley, asst. attys. gen., for appellee.
PER CURIAM.
The State of Alabama ("the State") filed a complaint seeking the forfeiture of a 2000 BMW automobile (hereinafter "the vehicle") allegedly owned by Johnnie Hildreth. In its complaint, the State alleged *345 that Latorey Ivory had used the vehicle to traffic cocaine, and, therefore, the State alleged that the vehicle was subject to forfeiture pursuant to § 20-2-93, Ala.Code 1975. Hildreth answered and denied knowledge of any criminal activity in connection with the vehicle.
The State moved for a default judgment alleging that the "defendant" Ivory had failed to answer its complaint. On October 20, 2008, the trial court ordered the forfeiture of the vehicle based on its finding that Ivory had failed to answer or appear at a scheduled hearing. That order failed to mention Hildreth as a defendant to the State's forfeiture complaint.
On March 23, 2009, Hildreth filed in the trial court a second answer in which she specifically asserted her ownership of the vehicle and sought the return of the vehicle. The trial court entered an order on May 4, 2009, scheduling the matter for a final hearing. In its May 4, 2009, order, the trial court stated that it had set aside "[a]ll orders of default." The trial court also later entered orders allowing the parties to take the depositions of certain witnesses who could not be available on the scheduled hearing date.
The trial court conducted the scheduled hearing, at which it received documentary and ore tenus evidence. On July 14, 2009, the trial court entered a judgment in which it made a number of factual findings and ordered that the vehicle be forfeited. Hildreth timely appealed; she appears before this court pro se.
As an initial matter, we note that Hildreth's brief on appeal refers to "the appellants" and that Ivory also signed the brief submitted by Hildreth. However, although Ivory was named as a defendant in the State's forfeiture complaint, in its judgment, the trial court noted that it had earlier entered a default judgment against Ivory and that she had not disputed the correctness of that judgment. At the final hearing, Ivory testified before the trial court that she had no interest in the vehicle, and Ivory did not file a notice of appeal from the trial court's July 14, 2009, judgment. Ivory has not asserted in the brief submitted to this court that she has any interest in the vehicle; in fact, in their reply brief, Hildreth and Ivory contend that Ivory has no interest in the vehicle. Only Hildreth appealed the trial court's July 14, 2009, judgment, and, therefore, Hildreth is the only appellant before this court.
At the ore tenus hearing, the State began its case by establishing that Hildreth is the mother of Bobby Bruce.[1] Lieutenant Steven Hanners of the Eufaula Police Department testified that Bruce was a known drug dealer and that Bruce had three prior drug-related felony convictions; Lt. Hanners stated that he believed he was the case agent on two of the arrests that resulted in those convictions. Lt. Hanners testified that, to his knowledge, Bruce and Ivory had been "boyfriend and girlfriend for quite some time" before the incident that led to the forfeiture of the vehicle at issue in this matter.
According to Lt. Hanners, on February 18, 2008, a "reliable informant" informed him that Bruce and Bruce's girlfriend would be purchasing cocaine in Georgia and transporting it to Alabama in a BMW automobile with certain characteristics. Lt. Hanners's testimony indicated that the *346 informant later called Lt. Hanners, who was watching for the BMW with a partner, to notify Lt. Planners that the BMW was traveling to his vicinity and that a woman was driving the vehicle. According to Lt. Hanners, shortly after that call from the confidential informant, Lt. Hanners observed a BMW automobile with the characteristics described by the informant; the vehicle was being driven by a woman. Lt. Hanners testified that he attempted to initiate a traffic stop of the vehicle. Lt. Hanners stated, however, that the driver of the vehicle immediately turned the vehicle around and attempted to elude the officers. It is undisputed that Ivory was the driver and sole occupant of the vehicle during that incident. Lt. Hanners testified that he pursued Ivory as she drove the vehicle in excess of 100 miles per hour and that the vehicle ultimately ran off the road and into a yard. Ivory exited the vehicle and ran, carrying her purse, but she was quickly apprehended and arrested.
Lt. Hanners testified that a search of Ivory's purse revealed a gallon-sized plastic bag that contained what was ultimately determined to be eight ounces of cocaine. Lt. Hanners also stated that another gallon-sized bag containing eight ounces of cocaine was found in the vehicle. In addition, Lt. Hanners testified that approximately one month after Ivory's February 18, 2008, arrest, a confidential informant purchased illegal drugs from Bruce while Ivory was a passenger in a vehicle Bruce was driving but which is also titled in Hildreth's name.[2]
Ivory admitted that as a result of her arrest on February 18, 2008, she pleaded guilty to a charge of trafficking in cocaine. The record on appeal indicates that Ivory was sentenced to 20 years' incarceration, split to serve 5 years; she was also ordered to pay, among other things, a $50,000 fine.
Hildreth testified that the vehicle at issue in this appeal belonged to her. According to Hildreth, on February 15, 2008, she saw the vehicle while it was being serviced at "A-1 Lube," and she decided she wanted to purchase it. Hildreth testified that she called Bruce to look at the vehicle for her and that he approved her purchase of the vehicle.
Hildreth stated that shortly before February 15, 2008, she received an income-tax refund and that she used that money to purchase the vehicle. According to Hildreth, she gave her daughter $6,500 in cash and the daughter took the money to A-1 Lube to purchase the vehicle. Hildreth stated that when she returned home from helping a relative who had been hospitalized, the vehicle was in her driveway. At the hearing in this matter, Hildreth stated that although the documents pertaining to the sales transactions contained what purported to be her signature, the documents were actually signed by her daughter.
Hildreth submitted into evidence copies of her paycheck stubs indicating her level of income. However, those paycheck stubs were dated around the time of the hearing and did not pertain to the amount of income Hildreth had at the time she *347 allegedly purchased the vehicle. Hildreth also submitted into evidence a 2007 federal income-tax return that showed that Hildreth had approximately $18,000 in income for 2007 and that she claimed two dependents at that time. In that 2007 federal income-tax return, which was dated January 24, 2008, Hildreth sought an income-tax refund of $5,824. Hildreth's testimony indicates that she received a check from the company that completed her income-tax return. However, Hildreth admitted that she did not have any proof regarding the amount she had actually received as a tax refund.
The State presented evidence disputing Hildreth's account of how the vehicle was purchased. Lt. Hanners testified that drug dealers had realized that the State, pursuant to § 20-2-93, Ala.Code 1975, frequently sought the forfeiture of vehicles that were owned by the drug dealers and used in the furtherance of criminal activity. Therefore, according to Lt. Hanners, those persons engaged in criminal activity often put the names of friends or family members on the titles to their vehicles in an attempt to avoid the application of the forfeiture statute.
Lt. Hanners testified that his investigation into the purchase of the vehicle at issue had revealed that on February 15, 2008, Bruce had purchased the vehicle but had placed the title to the vehicle in Lt. Hildreth's name. In an effort to substantiate Hanners's conclusion, the State presented the following pertinent evidence. David Price, an automobile wholesale dealer, testified that Bruce contacted him by telephone from A-1 Lube and stated that he wanted to purchase the vehicle. According to Price, Bruce told him that he wanted to have the title to the vehicle placed in his mother's name. Price also testified that Bruce left $5,000 in cash with Pam Williams, one of the owners of A-1 Lube, in order to purchase the vehicle and that Price later received that money from Pam Williams. Mark Williams, the other owner of A-1 Lube, testified that a young woman brought $6,000 in cash to A-1 Lube and that it took him 15 minutes to count the money because the bulk of the cash was in $10, $5, and $1 denominations.[3]
Donna Connell, who is licensed to sell automobiles to retail customers, actually performed the transaction for the sale of the vehicle on behalf of Price. Connell testified that Bruce completed all the paperwork for the sale but that he asked to place the title to the vehicle in Hildreth's name. According to Connell, although the signature on several of the documents read "Johnnie Hildreth," it was Bruce who signed those documents using Hildreth's name.
In her testimony, Hildreth admitted that she knew of one of Bruce's drug-related felony convictions, but she denied knowledge of Bruce's other two drug-related convictions. Hildreth asserted that she was not aware of any criminal activity involving the vehicle on February 18, 2008. Hildreth testified that while she was assisting her sick sister, her daughter called to inform Hildreth that she had allowed Ivory to borrow the vehicle while Ivory was looking for employment. Hildreth testified that she had given her permission for Ivory to use the vehicle on that occasion. Hildreth did not specify the date on which Ivory had borrowed the vehicle.
Ivory testified that she and Bruce are just friends; it appears that Ivory is also a *348 friend of Hildreth's daughter. Ivory stated that she borrowed the vehicle from Hildreth's daughter on a Friday and that she had permission to keep the vehicle until the following Monday. Ivory testified that she used the vehicle over the weekend for a variety of daily activities such as going to the grocery store and visiting relatives.
According to Ivory, on February 18, 2008, the day on which she was arrested for trafficking in cocaine, a friend named Libby asked Ivory to do her a favor. Ivory did not explain the nature of the conversation with Libby, but it is apparent from the context of Ivory's testimony that Ivory maintained that she was asked to transport something from Georgia into Alabama and that she agreed to do so. According to Ivory, when she returned to Alabama and saw the lights of the police vehicle behind her, she first questioned what it was that she was transporting. Ivory stated that she then looked in her purse and, for the first time, realized that she had illegal drugs in her possession. Ivory testified that she became frightened and attempted to elude the police officers.
In its judgment ordering the forfeiture of the vehicle, the trial court made the following pertinent findings of fact:
"2. Bobby Bruce negotiated with David Price, a local wholesaler of automobiles for the purchase of the [vehicle] made the subject of this [forfeiture action].
"3. David Price, a local wholesaler of cars sold the car through Ralph Motors and Donna Connell to Bobby Bruce.
"4. Donna Connell owns and operates Ralph Motor Company in Eufaula, Alabama as a retail outlet for used cars.
"5. Bobby Bruce came to Donna Connell to have the title prepared on the [vehicle] and requested the [vehicle] be placed in the name of Johnnie Hildreth.
"6. Bobby Bruce indicated to Donna Connell that this was his mother, although Court testimony indicated that he is not the biological child of Johnnie Hildreth, but she considers him to be her son.
"7. Bobby Bruce had seen the automobile at A-l Lube in Eufaula, Alabama. Mark Williams and his wife, Pam Williams, own and operate A-l Lube and sometimes park automobiles on their lot for David Price.
"8. David Price indicated to Mark Williams someone would be bringing the money by in cash to purchase the [vehicle].
"9. Mark Williams testified that a young lady brought in approximately $6,000 in cash, mostly which was in various small denominations.
"10. The purchase was made on February 15, 2008.
"11. On February 18, 2008, officers of the Drug Task Force in Eufaula, Alabama acting on an anonymous tip, stopped the [vehicle] after it crossed into Alabama from Georgia and found approximately 224 grams of crack cocaine in the purse of Latorey Ivory, one of the other named Defendants in this [forfeiture action].
"12. Latorey Ivory had been seen by the Eufaula Police and Drug Task Force on several occasions in the company of Bobby Bruce.
"13. Bobby Bruce is a known drug dealer in the Eufaula area.
"14. Johnnie Hildreth testified that she owned two other automobiles in addition to the [vehicle] made the subject of this [forfeiture action].
"15. Johnnie Hildreth produced income tax records that showed she made $18,000 from the job she holds in the healthcare industry.

*349 "16. Eufaula Police Officer and the Drug Task Force [agent] Stephen Hanners testified that he had also seen Latorey Ivory with Bobby Bruce subsequent to the February 2008 arrest in a Ford Mustang titled in the name of Johnnie Hildreth.
"17. Although Johnnie Hildreth testified that the money used to pay for the automobile came from a tax refund, she could not produce a cancelled check or paperwork to substantiate said claim.
"18. The denominations of the bills, being small bills, i.e. $5, $10, and $20, leads this Court to the conclusion that the money used for the purchase [was derived] from the sale of drugs and narcotics and not from the cashing of a check.
19. The [vehicle] was purchased by Bobby Bruce with money used for drug transactions and used to transport drugs and drug operations.
"20. Johnnie Hildreth's name was placed on the title at the request of Bobby Bruce and she was a straw man only."[4]
A trial court's judgment in a forfeiture action is presumed to be correct and will be reversed only if it is contrary to the great weight of the evidence. Holloway v. State ex rel. Whetstone, 772 So.2d 475, 477 (Ala.Civ.App.2000); State v. Smith, 578 So.2d 1374, 1376 (Ala.Civ.App. 1991). "In other words, a trial court's judgment based on ore tenus evidence will not be reversed absent a showing that it amounts to an abuse of discretion." Atkins v. State, 16 So.3d 792, 795 (Ala.Civ. App.2009) (citing Hillegass v. State, 795 So.2d 749, 753 (Ala.Civ.App.2001)).
Section 20-2-93, Ala.Code 1975, sets forth the authority pursuant to which the State may seek the forfeiture of property used in illegal activities. That section provides, in pertinent part:
"(a) The following are subject to forfeiture:
"....
"(5) All ... vehicles which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of any property described in subdivision (1) or (2) of this subsection."
Section 20-2-93 is penal in nature, and, therefore, it must be strictly construed. Ex parte McConathy, 911 So.2d 677, 681-82 (Ala.2005); Ex parte Smitherman, 902 So.2d 31, 34 (Ala.2004); and Holloway v. State ex rel. Whetstone, 772 So.2d 475 (Ala.Civ.App.2000).
On appeal, Hildreth asserts a number of arguments in which she attempts to demonstrate that the trial court erred in ordering the forfeiture of what she contends is her vehicle. For example, Hildreth argues that there is not sufficient evidence demonstrating that she knew or should have known that the vehicle would be used for an illegal purpose, that the forfeiture of the vehicle constituted an excessive fine, and that the search of the vehicle was improper.[5]
*350 However, we note that in her brief on appeal, Hildreth fails to address the ruling on which the trial court based its judgment, i.e., that Bruce purchased the vehicle and that Bruce used Hildreth as a "straw man" by placing title to the vehicle in Hildreth's name. The term "straw man" is defined as "a person set up to serve as a cover for a usu[ally] questionable transaction." Merriam-Webster's Collegiate Dictionary 1233 (11th ed. 2003). "Straw man" has also been defined as:
"A `front'; a third party who is put up in name only to take part in a transaction. Nominal party to a transaction; one who acts as an agent for another for the purpose of taking title to real property and executing whatever documents and instruments the principal may direct respecting the property. Person who purchases property for another to conceal identity of real purchaser, or to accomplish some purpose otherwise not allowed."
Black's Law Dictionary 1421 (6th ed. 1990). Therefore, in finding that Hildreth was, in essence, only a front for Bruce's ownership of the vehicle, the trial court implicitly determined that Hildreth was not actually the owner of the vehicle.
Section 20-2-93 specifies that only an owner or a bona fide lienholder may contest an action seeking the forfeiture of a vehicle:
"An owner's or bona fide lienholder's interest in any type of property other than real property and fixtures shall be forfeited under this section unless the owner or bona fide lienholder proves both that the act or omission subjecting the property to forfeiture was committed or omitted without the owner's or lienholder's knowledge or consent and that the owner or lienholder could not have obtained by the exercise of reasonable diligence knowledge of the intended illegal use of the property so as to have prevented such use."
§ 20-2-93(h), Ala.Code 1975 (emphasis added).
This court has held that a party who is not the owner of a vehicle but who contests the forfeiture of the vehicle is required, pursuant to § 20-2-93, to demonstrate that he or she holds a valid lien on the vehicle in order to proceed to the further inquiry of his or her consent or knowledge. See State ex rel. Watkins v. Sellers, 894 So.2d 733, 736 (Ala.Civ.App.2004) ("Both parties agree that the State established its prima facie case concerning the automobile, and Gibbs concedes that she was not the owner of the automobile at the time of its seizure; thus, the automobile may be saved from forfeiture only if Gibbs was a bona fide lienholder who had no knowledge of Sellers's drug trafficking and who could not have obtained knowledge of his illegal activities through reasonable diligence."); and Jester v. State, 668 So.2d 822, 823 (Ala.Civ.App.1995) ("[T]he parties stipulated that the son's marijuana offense was committed without the father's knowledge or consent, and that the father `could not have obtained by the exercise of reasonable diligence knowledge of the intended illegal use of the vehicle so as to have prevented such use.' The sole issue, therefore, is whether the father was a `bona fide lienholder' within the meaning of § 20-2-93(h)."). Similarly, in this case before the trial court could inquire into whether Hildreth consented to, had knowledge of, or should have known of the intended illegal use of the vehicle, it was required to determine whether Hildreth was an owner of the vehicle or had a valid *351 lien on the vehicle. State ex rel. Watkins v. Sellers, supra; Jester v. State, supra. Hildreth has asserted only ownership of the vehicle; she has not claimed to have any interest in the vehicle that might constitute a lien.
The fact that the title to the vehicle was in Hildreth's name was not, in itself, proof that she was the owner of the vehicle; title to a vehicle is only prima facie evidence of ownership of the vehicle. § 32-8-39(d), Ala.Code 1975 ("A certificate of title issued by the [Department of Revenue] is prima facie evidence of the facts appearing on it."). The prima facie evidence of ownership established by Hildreth's having title to the vehicle could be rebutted by other evidence pertaining to the ownership of the vehicle. Eleven Autos. v. State, 384 So.2d 1129, 1131 (Ala.Civ.App.1980). This court has noted that "proof of title of any property sought to be forfeited under § 20-2-93[] is of little probative value since `people engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name.'" Agee v. State ex rel. Galanos, 627 So.2d 960, 963 (Ala.Civ.App.1993) (quoting United States v. One 1977 36 Foot Cigarette Ocean Racer, 624 F.Supp. 290, 294-95 (S.D.Fla.1985)).
The State presented evidence tending to rebut the prima facie case of ownership Hildreth asserted by virtue of having title to the vehicle in her name. That evidence indicated that Bruce performed the entire purchase transaction for the vehicle, that he completed all the paperwork associated with the purchase transaction, that he signed the sales-transaction documents in Hildreth's name, and that the purchase price of the vehicle was paid in cash of small denominations that led the trial court to conclude that the "money used for the purchase [of the vehicle derived] from the sale of drugs and narcotics." Hildreth presented evidence tending to indicate that she had received an income-tax refund in the approximate amount of the purchase price of the vehicle. Hildreth also stated that her daughter had signed the sales-transaction documents.
The evidence also supports a determination that Hildreth did not exercise possession of the vehicle she claimed to have purchased. Ivory, who testified that she was a "friend" of Bruce's, testified that she borrowed the vehicle on a Friday and that she maintained possession of the vehicle until the following Monday. The vehicle was purchased on February 15, 2008, and, three days later, on February 18, 2008, the incident that formed the basis of this forfeiture action occurred. This court may take judicial notice of the fact that February 15, 2008, was a Friday and that February 18, 2008, was a Monday.[6] Thus, the record contains evidence indicating that for the entire time between the February 15, 2008, purchase of the vehicle and February 18, 2008, the date on which the vehicle was seized by law-enforcement officials, the vehicle had remained in Ivory's possession.
Although Hildreth presented evidence indicating that title to the vehicle *352 was in her name, the State presented evidence to dispute Hildreth's claim of ownership of the vehicle. "The trial court's decision simply boiled down to an issue of credibility, and it is the trial court who as the sole judge of a witness's credibility is charged with the duty of determining the weight to be accorded the testimony." Cleckler v. A & C Air Conditioning & Heating, Inc., 820 So.2d 830, 835-36 (Ala. Civ.App.2001). See also Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986) ("The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses."). It is the function of the trial court to resolve conflicts in the evidence, and the trial court's resolution of those conflicts based on its receiving ore tenus evidence will not be reversed unless it is plainly and palpably wrong. Jefferson County v. City of Leeds, 675 So.2d 353, 354 (Ala. 1995); Teague Bros. Transfer & Storage Co. v. Kinloch, 441 So.2d 968, 969 (Ala. Civ.App.1983); and Jones v. LeFlore, 421 So.2d 1287, 1288 (Ala.Civ.App.1982). The evidence supports the trial court's determination that Bruce, a known drug dealer, purchased the vehicle. The record also supports a conclusion that Ivory, Bruce's friend or girlfriend, maintained possession of the vehicle from the day it was purchased until the day it was seized by law-enforcement officials.
The trial court determined that Hildreth was merely a straw man, or a front, for Bruce's ownership of the vehicle. As stated earlier, implicit in the trial court's judgment is a determination that Hildreth is not the owner of the vehicle. We conclude that the trial court's judgment is supported by the evidence in the record on appeal. Section 20-2-93, Ala.Code 1975, allows only an owner of a vehicle or a bona fide holder of a lien on the vehicle to contest or seek to prevent the forfeiture of the vehicle pursuant to that section. § 20-2-93(h); State ex rel. Watkins v. Sellers, supra; and Jester v. State, supra. Accordingly, because we are affirming the trial court's determination that Hildreth is not the owner of the vehicle at issue in this matter, we pretermit discussion of the arguments raised in Hildreth's brief on appeal.
We note that in her reply brief Hildreth attempts to submit evidence in the form of a document to this court and to assert a new argument based on that document to this court. This court may not consider matters outside the record that are included in an appellate brief. Wal-Mart Stores, Inc. v. Goodman, 789 So.2d 166, 176 (Ala.2000). Our supreme court has explained:
"`"[A]ttachments to briefs are not considered part of the record and therefore cannot be considered on appeal."' Morrow v. State, 928 So.2d 315, 320 n. 5 (Ala.Crim.App.2004) (quoting Huff v. State, 596 So.2d 16, 19 (Ala.Crim.App. 1991)). Further, we cannot consider evidence that is not contained in the record on appeal because this Court's appellate review `"is restricted to the evidence and arguments considered by the trial court."' Ex parte Old Republic Sur. Co., 733 So.2d 881, 883 n. 1 (Ala.1999) (quoting Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992), and citing Rodriguez-Ramos v. J. Thomas Williams, Jr., M.D., P.C., 580 So.2d 1326 (Ala.1991))."
Roberts v. NASCO Equip. Co., 986 So.2d 379, 385 (Ala.2007). Therefore, we may not consider the document included in Hildreth's reply brief.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., dissents, with writing.
*353 MOORE, Judge, dissenting.
I respectfully dissent from the majority opinion's affirmance of the trial court's judgment because I conclude that the trial court's failure to join an indispensable party, i.e., Bobby Bruce, the person that the trial court determined to be the owner of the vehicle, deprived the trial court of jurisdiction to enter the judgment ordering that the vehicle be forfeited. See, e.g., Hodge v. State, 643 So.2d 982, 983-84 (Ala. Civ.App.1993) (holding that the owner of a vehicle subject to forfeiture proceedings was the real party in interest and an indispensable party to the forfeiture action).
"[T]he issue of the failure to join an indispensable party may ... be raised by an appellate court ex mero motu." J.K.L.B. Farms, LLC v. Phillips, 975 So.2d 1001, 1005 (Ala.Civ.App.2007). "`The absence of a necessary and indispensable party necessitates the dismissal of the cause without prejudice or a reversal with directions to allow the cause to stand over for amendment.'" Allbritton v. Dawkins, 19 So.3d 241, 244 (Ala.Civ.App. 2009) (quoting J.C. Jacobs Banking Co. v. Campbell, 406 So.2d 834, 850-51 (Ala. 1981)). Because the majority opinion affirms the judgment, I dissent.
NOTES
[1] The testimony at the hearing indicated that although Hildreth is not the biological mother of Bruce, Hildreth reared Bruce. Hildreth testified that she was awarded custody of Bruce when he was three. It does not appear that Hildreth formally adopted Bruce, but the record demonstrates that Hildreth refers to Bruce as her son and that Bruce considers Hildreth to be his mother.
[2] With regard to that allegation, Lt. Hanners testified:

"As a matter of fact we have video evidence of two different cases with Mr. Bruce in [Hildreth's] Mustang [(a vehicle not at issue in this appeal)]. And on the other occasion, he was in a Monte Carlo with Miss Ivory on the passenger side when an undercover informant approached him about buying drugs, and he then offered the informant money to use her vehicle so he could go pick up a shipment to bring back. And that was with Miss Ivory in the passenger seat of that car."
[3] Several different amounts were referred to as the purchase price of the vehicle. Price testified that he was paid $5,000 but that the bill of sale reflected a purchase price of $4,000. Williams testified that he received $6,000 in cash to hold for Price. Hildreth testified that she paid $6,500 for the vehicle.
[4] We note that although the State's theory was that Bruce, rather than Hildreth, owned the vehicle, the State did not serve Bruce with notice of the forfeiture action. Bruce did not file a pleading alleging an interest in the vehicle, and it does not appear that he has instituted any other proceeding regarding the vehicle. See Hodge v. State, 643 So.2d 982 (Ala.Civ.App. 1993) (concluding, among other things, that a determination of whether a party is indispensable must be based on the specific facts of each case). Therefore, any claim by Bruce to the vehicle is not a matter currently before this court.
[5] We note that Hildreth's arguments pertaining to the search of the vehicle and the alleged excessiveness of the fine were not presented to the trial court, and, therefore, those issues were not preserved for appellate review. Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala. 1992).
[6] Our supreme court has explained the concept of judicial notice as follows:

"`"It is customary for courts to take judicial knowledge of what ought to be generally known within the limits of their jurisdiction. This cognizance may extend far beyond the actual knowledge, or even the memory of judges, who may therefore resort to such documents of reference, or other authoritative sources of information as may be at hand, and may be deemed worthy of confidence...."'"
Green v. Mutual Benefit Health & Accident Ass'n, 267 Ala. 56, 59, 99 So.2d 694, 697 (1957) (quoting Hodge v. Joy, 207 Ala. 198, 201, 92 So. 171, 174 (1921), quoting in turn Gordon v. Tweedy, 74 Ala. 232, 237 (1883)).