MOORE, Judge.
 

 Natalie Hillbert appeals from a judgment ordering the forfeiture of two cashier’s checks in the amount of $9,900 each and a money order in the amount of $200 (“the instruments”). We reverse and remand.
 

 Procedural History
 

 On July 27, 2009, Douglas Albert Vales-ka, district attorney of the 20th Judicial Circuit of Alabama, filed a forfeiture action on behalf of the State of Alabama against Natalie Hillbert, Carlos Cortez a/k/a Luis Hernandez-Arrelleno (“Cortez”), and the instruments. The State attached to the complaint copies of the instruments. On August 14, 2009, Hillbert answered the complaint. The State filed an amended complaint on August 21, 2009. After an ore tenus proceeding, the trial court entered a judgment on January 7, 2010, dismissing Cortez as a party and condemning the instruments to the State. On February 2, 2010, Hillbert moved for a new trial
 
 *781
 
 asserting that the evidence was not sufficient to support the forfeiture of the instruments; that motion was denied on February 3, 2010. Hillbert filed her notice of appeal on February 19, 2010.
 

 Facts
 

 Jackie Smith, a sergeant with the special-investigation division of the Houston County Sheriffs office, testified that Cortez was arrested on July 16, 2009, for giving false information regarding his identity; his bond was set at $20,000, cash only. Smith testified that he had asked the personnel at the sheriffs office to contact him if anyone attempted to post a cash bond for Cortez because, based on an ongoing investigation, it was his belief that “these individuals” had no legitimate source of income from which to post a cash bond and because he wanted to investigate the source of any cash bond that anyone attempted to post for Cortez. Smith testified that, on July 24, 2009, he received a call from the sheriffs office notifying him that Hillbert was attempting to post a cash bond for Cortez. Smith testified that he, along with Investigator Rick Clemmons and Investigator Phillip Small, proceeded to the Houston County Jail where he met Hillbert and took a statement from her. Smith testified that he had recorded that statement without Hillbert’s knowledge.
 

 The recorded statement was entered into evidence. Although some portions of the statement are not easily heard, Hill-bert can be heard in the recording stating that she had gotten the money for the bond from “Brenda,” that she did not know Brenda’s last name, and that she did not know where Brenda had gotten the money. Smith testified that Hillbert also told him that the money had come from Brenda Stafford.
 

 Thomas Neil Thompson, a special agent for the Federal Drug Enforcement Agency, testified that Cortez has a long history of drug involvement and that he had also been deported. Thompson specifically testified that he had arrested Cortez approximately five years earlier on federal drug charges after Cortez was caught with approximately 220 pounds of marijuana. Thompson testified that, as a result of those charges, Cortez had been sentenced to approximately 30 months incarceration and had been deported to Mexico, his country of citizenship. Thompson testified, however, that Cortez had been arrested again in 2009 on drug charges.
 

 Thompson testified that Stafford is Cortez’s girlfriend or his common-law wife. He further testified that Stafford had been a target of a long, ongoing investigation by the Drug Enforcement Agency and that he had participated in controlled drug buys from Stafford, the most recent of which had occurred on July 31, 2008. He testified that, to his knowledge, Stafford does not appear to have any visible means of support.
 

 Rick Clemmons, an investigator for the Houston County Sheriffs office who is assigned to the vice/narcotics unit and to the United States Marshal Service, testified that Christopher Kelly Keys was in the same vehicle as Hillbert when Hillbert arrived at the jail to attempt to post a bond for Cortez. Clemmons testified that he had discovered methamphetamine on Keys’s person that same day. Clemmons also testified that Cortez has drug-related charges pending in Geneva County. He further testified that Hillbert had told him that Stafford had given her the $20,000.
 

 Hillbert’s father, Michael Martin, testified that Hillbert had brought him some cash and had asked him to use the cash to obtain a cashier’s check in the amount of $20,000. He testified that there were “bands” around much of the cash and that it was in a paper bag. Martin testified that, when he went to the bank to obtain
 
 *782
 
 the cashier’s check, he realized that he had only $19,900. He also testified that an employee at the bank had informed him that any transaction over $10,000 had to be reported. Martin testified that he had returned the cash to Hillbert. Martin further testified that his mother, Martha Martin (“Martha”), had earned quite a bit of money and had given Hillbert a considerable sum of money over the years.
 

 Hillbert testified that her grandmother, Martha, had given her between $200 and $500 every day for about six months. She testified that she assumed the money had come from her grandmother’s business. Hillbert testified that she had agreed to loan Stafford the money to post a bond for Cortez and that she had used the money her grandmother had given her to obtain the instruments. She testified that Keys had obtained one of the cashier’s checks for her; she did not, however, specify who had obtained the other cashier’s check or the money order. Hillbert testified that she had known Stafford for several years and she felt that Stafford would pay her back. She further testified that she had never been charged with a crime and that she earns approximately $200 a week cleaning houses.
 

 Discussion
 

 On appeal, Hillbert argues that the State did not provide sufficient evidence to support the forfeiture of the instruments. She further specifically argues that the fact that an “officer of the law” believes that the funds used to purchase the instruments were derived from proceeds obtained from a violation of the State’s laws concerning controlled substances is not sufficient evidence to support the forfeiture.
 

 “‘On appellate review of a ruling from a forfeiture proceeding at which the evidence was presented
 
 ore tenus,
 
 the trial court’s findings of fact are presumed to be correct and the judgment will be reversed only if it is contrary to the great weight of the evidence.
 
 Holloway v. State ex rel. Whetstone,
 
 772 So.2d 475, 477 (Ala.Civ.App.2000). In other words, a trial court’s judgment based on
 
 ore tenus
 
 evidence will not be reversed absent a showing that it amounts to an abuse of discretion.
 
 Hillegass v. State,
 
 795 So.2d 749, 753 (Ala.Civ.App.2001).
 

 “ ‘In
 
 King v. State,
 
 938 So.2d 967 (Ala.Civ.App.2006), this court discussed the State’s burden when it seeks to have property condemned pursuant to the civil-forfeiture statute.
 

 “ ““ “ ‘Under § 20-2-93 [Ala.Code 1975,] the State must establish a prima facie case for the seizure, condemnation, and forfeiture of the property. The standard of proof is reasonable satisfaction. The statute is penal in nature and, as such, should be strictly construed.’ ” ’
 
 Ex parte McConathy,
 
 911 So.2d 677, 681 (Ala.2005) (quoting
 
 Holloway v. State ex rel. Whetstone,
 
 772 So.2d [475] at 476 [(Ala.Civ.App.2000)], quoting in turn
 
 State v. Smith,
 
 578 So.2d 1374, 1376 (Ala.Civ.App.1991)).”
 

 “
 
 ‘King,
 
 938 So.2d at 970.’
 

 “Atkins v. State,
 
 16 So.3d 792, 795 (Ala.Civ.App.2009).
 

 “Section 20-2-93(a)(4), Ala.Code 1975, provides for the forfeiture of
 

 “ ‘[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of any law of this state; all proceeds traceable to such an exchange; and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of any law of
 
 *783
 
 this state concerning controlled substances.’ ”
 

 Williams v. State,
 
 46 So.3d 3, 4-5 (Ala.Civ.App.2010).
 

 In the present case, the trial court did not make any specific findings. Thus, we must “assume that [the trial court] made those findings necessary to support [its] judgment.”
 
 Casey v. Manning,
 
 571 So.2d 1024, 1025 (Ala.1990). At the trial, there was conflicting evidence presented as to whether the funds used to purchase the instruments originated from Stafford or Hillbert. We conclude, however, that the trial court could not have resolved the conflict in favor of the funds having originated from Hillbert because, assuming the funds originated from Hillbert, there was no evidence presented to indicate that Hillbert had furnished the funds or intended to furnish the funds “in exchange for a controlled substance in violation of any law of this state,” that the funds were “traceable to such an exchange,” or that the funds were “used or intended to be used to facilitate any violation of any law of this state concerning controlled substances.” Ala.Code 1975, § 20-2-93(a)(4). Additionally, there was no evidence indicating that Hillbert had any history with illegal drug usage or sales, and there was no evidence indicating that Hillbert did not have a legitimate source of income. In fact, Hillbert testified that she earned money cleaning houses and that her grandmother regularly gave her money. Thus, a finding that the funds used to purchase the instruments originated with Hillbert would not support the trial court’s judgment condemning the instruments.
 

 The only finding that would support the trial court’s judgment is a finding that the funds used to purchase the instruments originated from Stafford. In
 
 Harris v. State,
 
 821 So.2d 177 (Ala.2001), our supreme court affirmed a trial court’s judgment condemning certain currency. 821 So.2d at 185. The trial court had based its judgment, in part, on the fact that the owner of the currency was known to be involved in narcotics sales and was unemployed and that it was thus improbable that the owner of the currency had been able to save that amount of money. 821 So.2d at 183. Similarly, in the present case, the State presented evidence indicating that Stafford was a known drug dealer who had no legitimate source of income. Thus, assuming that the funds used to purchase the instruments originated with Stafford, the trial court could have concluded that the State had proved to “[a] reasonable satisfaction” that the funds were “traceable to ... an exchange [for a controlled substance].”
 
 See Williams, supra;
 
 and § 20-2-93(a)(4).
 

 We note, however, that Stafford was not a party to the forfeiture action. “[T]he issue of the failure to join an indispensable party may ... be raised by an appellate court
 
 ex mero motu.” J.K.L.B. Farms, LLC v. Phillips,
 
 975 So.2d 1001, 1005 (Ala.Civ.App.2007). “ ‘The absence of a necessary and indispensable party necessitates the dismissal of the cause without prejudice or a reversal with directions to allow the cause to stand over for amendment.’”
 
 Allbritton v. Dawkins,
 
 19 So.3d 241, 244 (Ala.Civ.App.2009) (quoting
 
 J.C. Jacobs Banking Co. v. Campbell,
 
 406 So.2d 834, 850-51 (Ala.1981)). Because the trial court implicitly found that the instruments belonged to Stafford, Stafford was the real party in interest and an indispensable party to this case.
 
 See, e.g. Hodge v. State,
 
 643 So.2d 982, 983-84 (Ala.Civ.App.1993) (holding that the owner of a vehicle subject to forfeiture proceedings was the real party in interest and an indispensable party to the forfeiture action).
 
 See also Hildreth v. State,
 
 51 So.3d 344, 353 (Ala.Civ.App.2010) (Moore, J. dissenting). Thus, we must
 
 *784
 
 reverse the trial court’s judgment and remand the cause for the trial court to dismiss the case or “ ‘to allow the cause to stand over for amendment.’ ”
 
 Allbritton,
 
 19 So.3d at 244.
 

 REVERSED AND ' REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN and THOMAS, JJ„ concur.
 

 BRYAN, J., concurs in the result, without writing.